THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JEFFREY R. DRAKE, Defendant-Appellee.

Second District   No. 2—96—0922

Opinion filed June 20, 1997.

David R. Akemann, State's Attorney, of St. Charles (John X. Breslin and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

No brief filed for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

The State timely appeals (145 Ill. 2d R. 604(a)(1)) from the trial court's order of July 10, 1996, granting the motion of defendant, Jeffrey R. Drake, to quash arrest and suppress evidence. The State filed a certificate of impairment. Defendant was indicted for unlawful possession of a weapon by a felon (720 ILCS 5/24—1.1(a) (West 1994)), unlawful possession of cannabis (more than 30 but not more than 500 grams) (720 ILCS 550/4(d) (West 1994)), and possession of a firearm without having in his possession a firearm owner's identification card (430 ILCS 65/2(a) (West 1994)). The State contends that the trial court's order, premised on its finding that there was no probable cause to arrest defendant, is manifestly erroneous. We affirm.

Defendant has not filed a brief, and we therefore consider this appeal under the guidelines of *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128 (1976). At the hearing on the motion, defendant testified that, on December 20, 1995, at about 11 p.m., he was a passenger in the front seat of a car traveling on the east side of Aurora. The vehicle was stopped by two plainclothes police officers. To his knowledge, defendant was not violating any law. There were three people in the car. The occupants were asked to get out of the car, and they did so. The police spoke with the driver and then

began searching the car and the trunk while another officer stood outside with the occupants. Defendant saw the police remove some things, including a backpack, from the trunk. The officer standing next to defendant said nothing at this time, but he placed defendant and the others under arrest after the other officer came back and said, "we got 'em." The occupants were handcuffed and transported to the county jail. Defendant stated there was no warrant for his arrest.

Over defendant's objection, the prosecution was allowed to cross-examine him regarding his whereabouts earlier that evening—subject to tying up the testimony to the relevant issue. Prior to the stop that night, defendant went to 1021 Grove Street in John Goodman's car, arriving at about 10:45 or 10:50 p.m. Defendant went into the house to use the bathroom, returned to the car, and left. Even earlier that evening, defendant had been at Goodman's house at 1021 Grove Street with Goodman, Bryan Vandenplum, and a man named Hawkins. Defendant did not know when the backpack was brought in, although he saw it in the house. The prosecutor asked, "And Mr. Vandenplum remove [sic] some cannabis from the backpack?" Defendant replied, "He—he had brought out a joint. We had smoked a joint at John Goodman's house." (It is unclear from this colloquy whether defendant was saying he saw Vandenplum remove the cannabis from the backpack.) When defendant was again specifically asked if he saw Vandenplum take the rolling papers and cannabis out of the pack at that time, defendant replied, "No." Defendant did not remember seeing a weapon. At the request of Vandenplum, defendant brought the backpack outside and handed it to Vandenplum who placed it in the trunk. Defendant stated he knew there was a backpack in the trunk of the car. When defendant was again asked if he recalled whether cannabis came out of the backpack or whether he saw a gun, he said, "No" and added that there were a lot of people in the house.

The court sustained defendant's objection when the prosecution next attempted to use defendant's statement to the police after his arrest and pursue a line of questioning based on that statement. The court found that this line of questioning was irrelevant for the purpose of the hearing, as the issue concerned what the officer knew at the time of the stop. The defense rested.

The State examined Patrick Perez, a deputy sheriff. Deputy Perez was involved in investigating gang and drug activities. He was patrolling the east side of Aurora that evening with Deputy Williams. They observed a vehicle registered to Goodman enter the driveway of Goodman's house at 1021 Grove Street. Goodman's vehicle was fol-

lowed by a second vehicle registered to Bryan Vandenplum. Perez believed it was 10 p.m. Everyone exited the vehicles and went into Goodman's house. About 20 minutes later, Vandenplum's vehicle left. The officers stopped the vehicle on Front Street because the license plates had expired and the registration light was not operating. The officers recognized the passenger in the front seat of this car as the same person who was a passenger in a vehicle stop made two weeks earlier on East Galena. He was then the passenger of a different vehicle in which John Goodman and Jason Reed, both Vice Lord gang members from Aurora, were present.

Deputy Perez stated they knew the passenger had a Vice Lord affiliation and the house they had just left was known as a Vice Lord house. It had been raided by the Aurora police several times in the last three or four years. Deputy Perez did not know what resulted from those raids. The deputies asked the occupants of the car to exit the vehicle so they could pat them down for weapons. An informant had given the deputies information that Goodman was smuggling weapons. The patdown produced no weapons. Hawkins, the backseat passenger, and defendant, the front seat passenger, were instructed to stand by Deputy Williams near the front of the squad car. Deputy Perez talked to Vandenplum, the driver, who gave them permission to search the car. Deputy Perez found a pack of rolling papers on the floorboard of the driver's side but found nothing else in the compartment of the car. Deputy Perez found the electric trunk release and opened the trunk to continue his search. In the trunk, he discovered a closed, green vinyl backpack, which contained a .22-caliber derringer that had been reported stolen. Deputy Perez felt the gun through the soft vinyl. When he unzipped the bag, he found two bags of marijuana that appeared to weigh one ounce each, $3,100, and the gun. The three suspects were arrested, handcuffed, and transported to the county jail. On cross-examination, Deputy Perez stated he could not see into the backpack. He opened it after he felt the gun on the bottom. He did not have a warrant for defendant's arrest, and he knew that the vehicle was not registered to defendant.

The trial court concluded that the facts did not show in any way "that the officers could have picked up on that this particular passenger was in constructive possession" of the contraband. The officers had to open the trunk lid to get to it. They had no knowledge of what had transpired regarding the backpack prior to the arrest. The court granted defendant's motion, and the State filed this appeal. The legality of the stop and the search is not at issue before this court. We consider only the trial court's decision finding that there was no probable cause to arrest defendant. The State first argues that, as the

movant, defendant did not make out a *prima facie* case that would have shifted the burden of proof to the State. The State further argues that the evidence overall was sufficient to establish joint and constructive possession of the backpack and to provide probable cause for defendant's arrest. We disagree.

■ A trial court's decision to suppress evidence will not be overturned on review unless that decision is clearly erroneous or against the manifest weight of the evidence, that is, unless the opposite conclusion is clearly evident. *People v. Lukach*, 263 Ill. App. 3d 318, 323 (1994). When the police arrest a person without a warrant, the trial court making the determination of probable cause must apply standards at least as stringent as those that guide a magistrate in deciding to issue a warrant. *People v. Tisler*, 103 Ill. 2d 226, 236 (1984).

■ In Illinois, a warrantless search or seizure is deemed unreasonable *per se* unless it comes within a specific, well-delineated exception to the warrant requirement, such as probable cause, and the ultimate test of the constitutionality of a seizure is reasonableness. *People v. McGee*, 268 Ill. App. 3d 32, 40 (1994). Thus, a warrantless arrest will be deemed lawful only when probable cause to arrest has been proved. *People v. Robinson*, 167 Ill. 2d 397, 405 (1995). Probable cause to arrest exists when the totality of the facts and circumstances known to the officer at the time of the arrest would lead a reasonable, prudent person, standing in the shoes of the officer, to conclude that a crime has been committed and the defendant was the person who committed the crime. *Robinson*, 167 Ill. 2d at 405; *People v. Montgomery*, 112 Ill. 2d 517, 525 (1986). Something more than a mere hunch or suspicion is required, and the determination is governed by commonsense considerations and the probability of criminal activity rather than proof beyond a reasonable doubt. *People v. Paarlberg*, 243 Ill. App. 3d 731, 734 (1993).

■ In a motion to quash or suppress, the initial burden of proof is on the defendant. *People v. Bobiek*, 271 Ill. App. 3d 239, 241 (1995). Once the defendant submits evidence which shows that, at the time of the arrest, he was doing nothing unusual (*i.e.*, his conduct was not indicative of the commission of a crime) and he was arrested without a warrant, the defendant has made a *prima facie* case that the police lacked probable cause. The burden then shifts to the State to show that the warrantless arrest was based on probable cause; in other words, the State must demonstrate that the police had reasonable grounds to believe that the defendant had committed a crime. *People v. Garcia*, 94 Ill. App. 3d 940, 942-43 (1981); see *People v. Stachelek*, 145 Ill. App. 3d 391, 399 (1986); see also *People v. Matthews*, 137 Ill. App. 3d 870, 874 (1985).

■ A person's mere proximity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search or seize that person. See *People v. Gross*, 124 Ill. App. 3d 1036, 1038 (1984). Where the standard is probable cause, a search or seizure of the person must be supported by probable cause particularized with respect to that person, and this requirement cannot be undercut or avoided simply by showing that there exists probable cause to search or seize another person who is nearby. *Ybarra v. Illinois*, 444 U.S. 85, 91, 62 L. Ed. 2d 238, 245, 100 S. Ct. 338, 342 (1979). The particularized probable cause requirement applies whether or not there is a warrant. *Lukach*, 263 Ill. App. 3d at 326-27; *Gross*, 124 Ill. App. 3d at 1038.

Defendant presented evidence that he was a passenger in the car and was not doing anything unusual or unlawful at the time of the stop. Over objection, the State was permitted to elicit information regarding defendant's prior activities and whether he knew of the presence of the backpack prior to the stop. During the cross-examination of defendant, he denied knowing of the contents of the backpack or of the presence of a gun. Even with this testimony, there was no satisfactory evidentiary connection made between defendant and criminal activity involving the contraband found in the trunk. As the trial court correctly pointed out, this information was unknown to the arresting officers. The trial court correctly ruled that this testimony was irrelevant to establish probable cause. At this point, defendant made a *prima facie* case that the arrest was made without a warrant and without probable cause.

Although the State's evidence did show that a backpack containing contraband was discovered—presumably as the result a search to which the driver consented—probable cause to arrest would exist only if defendant could be linked to it, such as by joint or constructive possession. *People v. Walton*, 221 Ill. App. 3d 782, 787 (1991). The evidence showed that defendant might be associated with a gang and contraband was found in a locked trunk. However, there was no evidence presented that defendant in this case had any degree of dominion or control over this area of the vehicle or of the contraband or that he even knew what was in the backpack. Before the arrest, the police never established, by questioning the occupants, for example, who controlled or owned the backpack. There is no evidence that defendant had a key to the car or to the trunk.

■ To establish that a possessory offense had taken place, the State would have had to present evidence tending to show that defendant knew of the presence of the contraband and that it was in his immediate and exclusive possession. *People v. Denton*, 264 Ill. App.

3d 793, 798 (1994); *People v. Mason*, 213 Ill. App. 3d 163, 167 (1991). Where two or more people share immediate and exclusive control or share the intention and power to exercise control, there arises a situation of joint possession. *Denton*, 264 Ill. App. 3d at 798. Even where there is no physical possession, constructive possession may exist where there is an intent and capacity to maintain control and dominion over the contraband, and this may be proved by showing that the defendant controlled the premises where it was found. *Mason*, 213 Ill. App. 3d at 167.

■ We recognize that probable cause need not be proved by the same quantum of evidence required for a conviction of the substantive offense. In the present case, the State did not make even a minimal showing that defendant knew of the contraband, that he had immediate possession of it, or that he exercised any degree of control over it. The contraband was in an enclosed container within a locked trunk. It was not immediately accessible to defendant. Absent additional evidence connecting the defendant to the contraband either through his knowledge or possession, his mere presence as a passenger in the vehicle is insufficient to establish probable cause to arrest. There is little case law in Illinois on point. *Cf. People v. Waddell*, 190 Ill. App. 3d 914, 925 (1989) (officers had insufficient information at time of arrest to form reasonable belief that driver-owner of vehicle knew passenger was carrying cocaine concealed in his pants or had constructive control; however, under the circumstances, probable cause to arrest driver arose from discovery in trunk of white powdery substance and mirror).

Although there are Illinois cases discussing constructive or joint possession in the context of prosecutions to convict the accused of the substantive offenses, we have found no Illinois case that would be clearly dispositive of whether there was probable cause to arrest based on the particular facts here. See, *e.g., People v. Mosley*, 131 Ill. App. 2d 722 (1971) (in prosecution to convict for unlawful possession of narcotics found in trunk after stop of automobile where driver gave keys to police, evidence was found insufficient to establish that defendant passenger had any degree of control over the narcotics, joint or otherwise; mere presence of defendant as passenger was insufficient to establish criminal possession).

Our conclusion that there was no probable cause to arrest defendant finds support in analogous cases from other jurisdictions. In *People v. Foster*, 788 P.2d 825 (Colo. 1990), an officer made a traffic stop of a pickup truck driven by Martin Martinez. Foster, the defendant, was a passenger in the truck. After checking the driver's registration, which showed that he was the owner of the truck, the

officer noticed a motorcycle in the rear of the truck. The driver said he owned it and gave the officer permission to examine it. The officer checked the vehicle identification number and learned from a computer check that the motorcycle was reported stolen. The officer placed the driver and the defendant under arrest. The defendant told the officer that, as far as he knew, Martinez had borrowed the motorcycle from a friend. Following his arrest, Foster was transported to the county jail where he was searched. The search produced two packets of cocaine. The following day, the officer was informed that the motorcycle previously reported stolen was no longer listed as stolen. *Foster*, 788 P.2d at 827.

At the suppression hearing, the trial court ruled that the officer properly stopped the truck and had probable cause to arrest Martinez based on the information he had about the motorcycle, but the officer had no probable cause to arrest the defendant. The court found there was nothing to show that the passenger had any knowledge of the stolen status of the motorcycle. The Colorado Supreme Court concluded that the mere presence of the passenger was insufficient to provide probable cause to arrest him for a crime related to the motorcycle. *Foster*, 788 P.2d at 829. The officer did not have reasonable grounds to believe that the defendant knew that the motorcycle was stolen or that he was in any way connected with it. There was no evidence that the defendant had committed or was committing a crime. *Foster*, 788 P.2d at 829. The court relied principally on *United States v. Di Re*, 332 U.S. 581, 92 L. Ed. 210, 68 S. Ct. 222 (1948) (reversing conviction of passenger found to possess counterfeit gasoline coupons in search at station house; accused had been merely present as a passenger when driver was arrested with assistance of an informer). *Foster*, 788 P.2d at 828-29.

In *State v. Jenison*, 442 A.2d 866 (R.I. 1982), the police had received information from an employee of a motor inn that drug paraphernalia had been seen in room No. 249 at the inn. The area was placed under police surveillance. Several people came and went during a brief period. When the police approached a person named Bennett, he dropped a bag and began to run. The bag was found to contain marijuana and he was arrested. After the police learned from him that the marijuana came from room No. 249, they went to the room and knocked. A gun was visible as the door opened, and the police arrested the three occupants. Later, a Mercury Cougar entered the parking lot and stopped below room No. 249. One officer recognized Joel Jenison. Michele Cory, a female passenger, was with Jenison. As he emerged from the car, he began to walk toward the trunk, opened it, removed an object, and tucked it into his pants.

Jenison went up to room No. 249 and then went back down the stairs toward his car. The police began to approach Jenison. *Jenison*, 442 A.2d at 869-70.

According to the police version of events, which differed from other witnesses' accounts, as Jenison reached the car, he opened the trunk and took the object, which one officer recognized as a gun, out from under his shirt. Alerted that the police were in pursuit, Jenison appeared to be ready to close the trunk when one officer put his hand on it. The police arrested him. The police testified that they saw an automatic pistol resting in a partially open briefcase. The police also recovered a total of $151,000 from the trunk. *Jenison*, 442 A.2d at 870.

While Jenison was read his rights, Cory remained in the car. She was asked to step out and did so. One officer took her pocketbook. Later, at the police station, the pocketbook yielded six ounces of cocaine. Jenison was charged with carrying a pistol without a license. Because of the inconsistencies in the various witnesses' versions of the events, the trial court did not find the police testimony credible, and the trial court's decision to suppress the evidence taken from Jenison's trunk was affirmed. *Jenison*, 442 A.2d at 871-73.

Cory was charged with possession of a controlled substance with intent to deliver. The trial court suppressed the evidence taken from her purse, finding that the officers should have obtained a search warrant. The Rhode Island Supreme Court determined, however, that there was no probable cause to arrest Cory. The reviewing court noted that facts that become known to the police subsequent to an arrest are irrelevant to the probable cause determination. The court stated that the arrest of a person must be supported by probable cause particularized with respect to that person. *Jenison*, 442 A.2d at 874, citing *Ybarra*, 444 U.S. at 91, 62 L. Ed. 2d at 245, 100 S. Ct. at 342.

The *Jenison* court determined that Cory was merely an individual who was situated at a site where narcotics activity had taken place earlier in the afternoon. She was a passenger in a car driven by Jenison, a person suspected of criminal activity. Because these were the only facts known to the police at the time of her arrest, her mere presence, without more, was insufficient to establish probable cause for her arrest. *Jenison*, 442 A.2d at 874.

The *Jenison* court also concluded that the facts did not show that Jenison had the requisite knowledge of the presence of the cocaine in Cory's pocketbook, nor did they show his intent to exercise control over it. *Jenison*, 442 A.2d at 875-76. The court found the facts insufficient to lead a reasonable person to believe that Jenison had

constructive possession of the cocaine. *Jenison*, 442 A.2d at 875-76. The *Jenison* court ultimately concluded that the information against Jenison should have been dismissed. *Jenison*, 442 A.2d at 876. See also *Rogers v. State*, 586 So. 2d 1148, 1151 (Fla. App. 1991) (mere proximity to contraband alone did not provide probable cause to arrest front seat passenger in van premised on possession or constructive possession of cocaine found inside pockets behind seat of van); accord *Rennard v. State*, 675 So. 2d 1006, 1008 (Fla. App. 1996) (without more, mere proximity of front seat passenger to contraband found in car did not create probable cause to arrest based on constructive possession of contraband).

Our examination of the evidence in this case and our analysis of the above illustrative cases persuade us that the trial court's decision was neither manifestly erroneous nor against the manifest weight of the evidence.

The judgment of the circuit court of Kane County is affirmed.

Affirmed.

GEIGER, P.J., and DOYLE, J., concur.