THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. AMANDA K. WELLING, Defendant-Appellant.

Second District   No. 2—00—1102

Opinion filed September 13, 2001.

9. CRIMINAL LAW—*when constructive possession exists.* Constructive possession of contraband exists where there is an intent and capacity to maintain control and dominion over the contraband, and the State may prove constructive possession by showing that the defendant controlled the premises where the contraband was found.

10. CRIMINAL LAW—*determination that probable cause existed to search defendant incident to arrest affirmed.* The trial court's determination that probable cause existed to search the defendant incident to her arrest was affirmed where the record did not reveal any evidence that the officers were in a position of "willful ignorance" whereby they had the means to narrow the focus of their search but deliberately chose not to avail themselves of those means, both the defendant and her companion denied knowing the contents of the bag that was in their van, and based on the facts of the case, a reasonable person standing in the officers' shoes could conclude that the defendant had committed the crime of possessing contraband.

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Martin P. Moltz and Joan M. Kripke, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BOWMAN delivered the opinion of the court:

Following a stipulated bench trial, defendant, Amanda Welling, was convicted of unlawful possession of less than 15 grams of a controlled substance (cocaine) (720 ILCS 570/402(c) (West 1998)) and sentenced to 24 months of probation. Defendant appeals her conviction, arguing that the trial court erroneously denied her pretrial motion to quash arrest and suppress evidence (motion to suppress). Specifically, defendant argues that (1) the police unlawfully detained her prior to searching her, and (2) the police did not have probable cause to search her person.

Most of the essential facts related to the stop and search of defendant are not in dispute. Officer Michael Skopek of the Glendale Heights police department testified that on October 1, 1999, he was surveilling a residence at 77 East Armitage Avenue in response to a complaint that drug deals were taking place at the residence. In addi-

tion, Skopek was watching the house because one of its residents, James Targo, was wanted on an outstanding warrant. Skopek had received information from other officers that Targo was eluding the police by hiding in a blue Ford Aerostar minivan when he left the house.

When Skopek arrived at his surveillance location, he saw a blue Ford minivan parked on the street near the house. Soon thereafter he saw two females leave the house and enter the van. One of the women was carrying a large red bag. From his vantage point, Skopek could not tell which woman was carrying the bag.

Skopek followed the women in the minivan. He paced the minivan's speed with his squad car and stopped the minivan for going 35 miles per hour in a 25-mile-per-hour zone. Debra Reich was driving the minivan, and defendant was seated behind Reich in the second row of seats. The red bag was on the seat next to defendant. A large pile of clothes was on the floor of the van behind defendant. Skopek was not sure whether Targo was hiding under the clothes.

Skopek testified that Reich was "extremely nervous" when he approached her and asked for her driver's license. Skopek asked Reich to exit the minivan, which she did. At about this time, Officer C.J. Camel arrived on the scene to assist Skopek. Skopek asked Reich where she came from, and Reich said that she had picked up a friend from the Armitage address. Reich said that she was taking her friend (defendant) to a boyfriend's house to pick up some clothes and then they were going to get something to eat. Skopek asked Reich if she knew James Targo, and she denied knowing him.

Skopek then went to talk to defendant. He asked her where she and Reich were going, and defendant responded that she did not know. Next, he asked defendant whose bag was next to her. Defendant responded that she did not know and that it must belong to Reich. From briefly talking with defendant, Skopek ascertained that defendant was deaf. From then on, defendant and Skopek communicated by writing notes. Skopek asked defendant to exit the van because he wanted to separate her from the bag in case there were any weapons inside it.

After defendant denied knowing anything about the bag, Skopek went back to talk to Reich. He told her that he had been watching the house at 77 East Armitage in response to a drug dealing complaint and that defendant had said that the bag was not hers and must be Reich's. Skopek asked Reich for permission to search the van because he thought there might be drugs in the bag. Reich initially said she did not care if Skopek performed a search but then changed her mind. For about 10 minutes she vacillated between telling Skopek she did

not care if he searched the vehicle and telling him that she did not want him to search it because she did not know what was in the bag. Skopek then told her that he was going to call in a canine unit to sniff the van.

Skopek requested that his department's canine unit come to the scene but was informed that the canine unit was not yet on duty. Skopek then called the Du Page County sheriff's department and asked for help from its canine unit. That canine unit, however, was not close by and would have taken a long time to get to Glendale Heights. Skopek then learned that his sergeant had called in the Glendale Heights canine unit to respond to Skopek's call.

During Skopek's conversation with Reich and the subsequent wait for the canine unit, defendant stood on the grass parkway between the sidewalk and the street. Officers Skopek and Camel told her that she could sit down while they were waiting. Defendant never asked if she was free to leave. The officers never told her that she was free to leave, but both officers testified that defendant could have left at that point if she had wanted to do so.

Before the canine unit arrived, Reich opened the door to the minivan, took the bag out, handed it to Skopek, and told him he could look in it. When Skopek looked inside, he saw various items of drug paraphernalia and white powder that appeared to be cocaine. Skopek did not field test the white powder. Skopek then directed Officer Camel to pat down defendant. Officer Camel found drugs on defendant's person. Reich was not arrested because the drug paraphernalia items in the bag were homemade or multiuse.

Officer Camel's testimony regarding the events leading up to the search basically mirrored that of Officer Skopek. Likewise, defendant's version of events did not differ significantly from the testimony given by Skopek and Camel. Defendant testified that the driver, whom she knew only as "Debbie," was not her friend. Defendant never consented to a search of her person and was never advised that she was free to leave.

There was some discrepancy in the testimony regarding how long defendant was detained before the search occurred. Defendant testified that between 15 and 30 minutes elapsed from the initial stop until she was searched. Skopek testified that about 30 minutes passed, and Camel stated that she searched defendant about 30 to 45 minutes after she arrived on the scene.

After hearing the testimony of defendant, Skopek, and Camel, the trial court determined that the stop was lawful; the officers had reasonable suspicion to detain defendant due to defendant's and Reich's denial of ownership of and knowledge about the bag; the officers

obtained Reich's consent to search the bag; and the presence of drug paraphernalia and what appeared to be narcotics in the bag gave the officers probable cause to arrest and, therefore, to search defendant. For these reasons, the trial court denied defendant's motion to suppress. Following defendant's stipulated bench trial and conviction, defendant moved for a new trial on the ground that the trial court erroneously denied her motion to suppress. The trial court denied the motion for a new trial and this appeal ensued.

On appeal, defendant does not contest the validity of the stop or the validity of the consent to search the bag. She argues that (1) the officers illegally detained her prior to the search and (2) the officers performed an illegal search of her person because the items found in the bag did not give rise to probable cause to arrest.

●1 We address first the applicable standard of review. When a reviewing court considers a ruling on a motion to suppress involving a question of probable cause or reasonable suspicion, the court should review the trial court's findings of historical facts only for clear error and must give due weight to inferences drawn from those facts. *People v. Sorenson*, 196 Ill. 2d 425, 431 (2001), citing *Ornelas v. United States*, 517 U.S. 690, 699, 134 L. Ed. 2d 911, 920, 116 S. Ct. 1657, 1663 (1996). Consequently, the trial court's factual findings will be reversed only if they are against the manifest weight of the evidence. *Sorenson*, 196 Ill. 2d at 431. However, we review *de novo* the trial court's ultimate determination of a defendant's legal challenge to the denial of his motion to suppress. *Sorenson*, 196 Ill. 2d at 431. The key facts pertaining to the detention and search of defendant are not in dispute. Thus, we review *de novo* whether those facts justified the denial of defendant's motion to suppress.

Defendant's first contention is that the search of her person was the product of an unlawful detention. Relying on *People v. Brownlee*, 186 Ill. 2d 501 (1999), defendant argues that (1) the officers lacked reasonable suspicion to detain her and (2) even if reasonable suspicion existed, the detention was unreasonably long. The State argues that, pursuant to *People v. Juarbe*, 318 Ill. App. 3d 1040 (2001), defendant's detention was lawful.

●2 The fourth amendment to the United States Constitution protects individuals from unreasonable searches and seizures of their persons and property. U.S. Const. amend. IV. Generally, a warrant supported by probable cause is required for a search or seizure to be considered reasonable under the fourth amendment. *People v. Flowers*, 179 Ill. 2d 257, 262 (1997). However, under *Terry v. Ohio*, 392 U.S. 1, 21-22, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880 (1968), an officer may make a valid investigatory stop without probable cause to arrest

when the officer reasonably infers from all the facts and circumstances that the person is committing, has committed, or is about to commit a crime. *People v. Ertl*, 292 Ill. App. 3d 863, 868 (1997). The officer's conduct must be based on more than a mere hunch; it must be supported by specific, articulable facts that, when taken together with natural inferences, make the intrusion reasonable. *Ertl*, 292 Ill. App. 3d at 868. A detention is justified when an officer observes unusual conduct that leads him reasonably to believe in light of his experience that criminal activity may be afoot. *Ertl*, 292 Ill. App. 3d at 868-69.

●3 A defendant who files a motion to suppress bears the burden of establishing that the search or seizure was unlawful. *Ertl*, 292 Ill. App. 3d at 868. The defendant must make a *prima facie* case that the police acted without a warrant and that he was doing nothing unusual to justify the intrusion of a warrantless search or seizure. *Ertl*, 292 Ill. App. 3d at 868. After the defendant has satisfied this burden, the State must present evidence to justify the intrusion. *Ertl*, 292 Ill. App. 3d at 868.

Defendant analogizes the case before us to *Brownlee*, in which the court held that the State failed to present any evidence that justified the intrusion of detaining the defendant. In *Brownlee*, police officers stopped the car in which the defendant was a passenger for traffic violations after seeing it leave an area known for its " 'crack houses.' " *Brownlee*, 186 Ill. 2d at 505-06. After checking all of the occupants' identification and checking for outstanding warrants, the officers decided not to issue any traffic citations. The officers informed the driver that he would not receive a citation but did not tell him that he was free to leave. Instead, the officers paused for a couple of minutes and then asked the driver for permission to search the car. The driver consented to the search. During the search, the officers found two "blunts" (hollowed-out cigars filled with marijuana) underneath a jacket in the center of the front seat. The officers determined that there was probable cause to arrest all four people who were in the car because the blunts were within the reach of all of the car's occupants, no one claimed ownership of the blunts, one of the passengers stated that all four occupants had smoked the blunts, and the defendant said that she had smoked marijuana before joining the others in the car. The officers searched the defendant incident to her arrest and discovered the cocaine that formed the basis of the charges against her. *Brownlee*, 186 Ill. 2d at 506-07.

Our supreme court held that the officers restrained the movement of the car's occupants by their show of authority and thereby seized the defendant and the other occupants of the car. *Brownlee*, 186 Ill. 2d at 520. The court further held that the State waived any argument

that (1) the detention was objectively justified, (2) the detention was sufficiently limited in time and scope, and (3) the evidence was not the fruit of an illegal detention. *Brownlee*, 186 Ill. 2d at 521. Consequently, the court affirmed the trial court's suppression of the evidence as the fruit of an illegal detention. *Brownlee*, 186 Ill. 2d at 521.

•4, 5 In its brief, the State does not challenge defendant's argument that her detention constituted a seizure under the fourth amendment (U.S. Const., amend. IV). Consequently, the State has waived any such argument. See *Brownlee*, 186 Ill. 2d at 521. However, unlike *Brownlee*, the State in the case before us did contend that defendant's detention was based on specific, articulable facts that gave rise to a reasonable suspicion that she was involved in criminal activity. Those facts included Skopek's awareness that a neighbor had complained of drug dealing at the 77 East Armitage residence; Skopek's observation of either defendant or Reich carrying a red bag from the residence into the van; defendant's and Reich's subsequent disavowal of any knowledge regarding the bag's contents; and Reich's nervous behavior. Because the State did present evidence that the detention was reasonable based on these facts, *Brownlee* is distinguishable as to this issue. Furthermore, we hold that these facts, when taken together, gave rise to a reasonable suspicion of criminal activity sufficient to establish that the detention was reasonable. Defendant's and Reich's denial of any knowledge regarding the bag, despite the fact that one of them brought it into the van and left it right beside defendant, was unusual conduct that led Skopek, an experienced officer, to believe that the bag contained contraband.

Defendant also relies upon *People v. Sinclair*, 281 Ill. App. 3d 131 (1996). We find this case distinguishable as well. In *Sinclair*, the driver of the car in which the defendant was a passenger unequivocally refused to consent to a search of his vehicle. Instead of allowing the driver and the defendant to leave, the officer continued to ask for consent and eventually convinced the driver to consent to a search. The court held that the officer had no justifiable reason to prolong the traffic stop in an effort to change the driver's mind and that once the driver refused to consent to a search the officer was required to release the car and all of its occupants, in the absence of either probable cause or reasonable suspicion sufficient to extend the stop. *Sinclair*, 281 Ill. App. 3d at 138.

Defendant's reliance on *Sinclair* is misplaced for two reasons. First, the driver of the van in the case before us, Reich, did not unambiguously withhold consent to search. She initially agreed to allow the search, then changed her mind, going back and forth multiple times. Further, there were additional facts, as we set forth above, that gave

rise to a reasonable and articulable suspicion sufficient to extend the traffic stop.

•6 Next, we address the length of defendant's detention. She contends that, even if she was properly detained, the detention was impermissibly prolonged. It is well established that, in addition to being justified in the first place, an investigative detention must be " 'reasonably related in scope to the circumstances which justified the interference in the first place.' " *Juarbe*, 318 Ill. App. 3d at 1052, quoting *Terry*, 392 U.S. at 19-20, 20 L. Ed. 2d at 905, 88 S. Ct. at 1879. An investigative detention " 'must be *** no longer than is necessary to effectuate the purpose of the stop.' " *Brownlee*, 186 Ill. 2d at 519, quoting *Florida v. Royer*, 460 U.S. 491, 500, 75 L. Ed. 2d 229, 238, 103 S. Ct. 1319, 1325 (1983) (plurality opinion). The State bears the burden of showing that a seizure based on reasonable suspicion was sufficiently limited in scope and duration. *Brownlee*, 186 Ill. 2d at 519, citing *Royer*, 460 U.S. at 500, 75 L. Ed. 2d at 238, 103 S. Ct. at 1326 (plurality opinion). Brevity is an important factor in determining whether a detention was reasonable, but the court should also consider whether the police acted diligently in pursuing the investigation. *People v. Ruffin*, 315 Ill. App. 3d 744, 749 (2000).

Defendant estimated that between 15 and 30 minutes elapsed from the time of the stop until she was searched. Officer Skopek estimated the time at approximately 30 minutes and Officer Camel estimated it at 30 to 45 minutes. Again defendant relies on *Brownlee* for the proposition that this was too long. However, in *Brownlee* the court did not specifically address the time issue except to say that the State had waived it for failing to present any argument that the length of the detention was reasonable. *Brownlee*, 186 Ill. 2d at 521.

Defendant also relies on *Ruffin*, *People v. Hess*, 314 Ill. App. 3d 306 (2000), and *People v. Koutsakis*, 272 Ill. App. 3d 159 (1995), for the proposition that a 30-minute detention is unreasonably long. In *Ruffin* and *Koutsakis*, the court determined that the police had no reason to detain either defendant once the initial traffic stop was completed. *Ruffin*, 315 Ill. App. 3d at 750; *Koutsakis*, 272 Ill. App. 3d at 164. This was not so in the case before us, as we have held that Officer Skopek had a reasonable suspicion that defendant and Reich were in possession of contraband. Further, in *Ruffin*, the court concluded that the officer clearly prolonged the stop in an effort to obtain incriminating information from the defendant. *Ruffin*, 315 Ill. App. 3d at 749. As we will explain below, the evidence in the case before us showed that Officer Skopek acted diligently in pursuing his investigation.

*Hess* involved the 30- to 40-minute detention of a defendant at the

residence of a third party upon whom the police were serving search and arrest warrants. *Hess*, 314 Ill. App. 3d at 312. The court held that the police were justified in detaining the defendant long enough to secure the premises but were obliged to release him once they had accomplished that task, absent any other circumstances that would justify detaining him. *Hess*, 314 Ill. App. 3d at 312.

•7 *Ruffin*, *Koutsakis*, and *Hess* are distinguishable because in those cases the police did not have the reasonable suspicion necessary to justify an investigative detention of any of the defendants. That is not true in the case before us. Defendant has not cited any authority for the proposition that a 30-minute detention is unreasonably long when the police are justified in detaining the defendant.

Moreover, the evidence showed that the detention was prolonged in part because of Reich's equivocations and in part because Officer Skopek had trouble finding a canine unit to come to the scene. There was no evidence that Skopek impermissibly extended the detention period before asking for permission to search the van. Rather, Skopek asked for consent to search after briefly conversing with defendant and Reich soon after he stopped the van. Then, after going back and forth with Reich for approximately 10 minutes regarding whether she would consent to a search, Skopek decided to call in a canine unit to sniff the van. Neither his department's canine unit nor the sheriff's canine unit was immediately available. This was a matter beyond Skopek's control. There was no evidence that he delayed the detention period in an attempt to obtain evidence.

In *Juarbe*, the defendants argued that their detention was unconstitutionally prolonged because they had to wait for approximately one hour for a canine unit to arrive on the scene. *Juarbe*, 318 Ill. App. 3d at 1053. As recited by the court in *Juarbe*, the testimony of the arresting officer showed that approximately 30 minutes elapsed from the initial stop until the canine unit arrived, 13 minutes of which were spent waiting for the canine unit to arrive. The court held that this was not an unreasonable wait. *Juarbe*, 318 Ill. App. 3d at 1053. Likewise, we conclude that the 30-minute detention of defendant in the case before us was reasonable in length and in scope.

•8 Defendant's final contention is that, even if the detention was proper, the contents of the red bag did not give rise to probable cause to arrest her and subject her to a search incident to arrest. We disagree. Probable cause to arrest exists when the totality of the facts and circumstances known to the officer at the time of the arrest would lead a reasonable, prudent person, standing in the officer's shoes, to conclude that a crime has been committed and the defendant was the

person who committed the crime. *People v. Drake*, 288 Ill. App. 3d 963, 967 (1997). More than a mere hunch or suspicion is required. The determination of whether probable cause existed is governed by commonsense considerations and the probability of criminal activity rather than proof beyond a reasonable doubt. *Drake*, 288 Ill. App. 3d at 967.

●9 The constructive possession of contraband exists where there is an intent and capacity to maintain control and dominion over the contraband. *Drake*, 288 Ill. App. 3d at 969. The State may prove constructive possession by showing that the defendant controlled the premises where the contraband was found. *Drake*, 288 Ill. App. 3d at 969.

Defendant relies on *Drake*, in which this court held that the police lacked probable cause to arrest the defendant, who was a passenger in a car in which contraband was found. *Drake*, 288 Ill. App. 3d at 969. The drugs were located in a locked container in the trunk of the car. Defendant had been seated in the front passenger seat and there was no other evidence linking the defendant to the contraband. *Drake*, 288 Ill. App. 3d at 969. This is a far cry from the situation we are presented with here, where defendant was the only person in the backseat of the van, right next to the bag that contained what appeared to be drug paraphernalia and drug residue. For this reason, *Drake* is inapposite.

*People v. Fondia*, 317 Ill. App. 3d 966 (2000), another case relied upon by defendant, is also inapposite. In *Fondia*, a drug-sniffing dog alerted at the driver's car door. The defendant had been riding in the backseat on the passenger side of the car. After the dog alerted, the police searched all of the car's occupants and found contraband on the defendant's person. *Fondia*, 317 Ill. App. 3d at 968. The court held that the dog's alert at the driver's door did not give rise to probable cause to search all of the car's occupants and that the police should have had the dog sniff all of the occupants, thereby narrowing the focus of the officers' investigation. The court reasoned that the officers' " 'willful ignorance' " as to whether the dog would have alerted upon sniffing all of the occupants "dissipate[d] the reasonableness of the police conduct." *Fondia*, 317 Ill. App. 3d at 970. Again, this situation is quite different from the one presented to us.

●10 The record does not reveal any evidence that the officers in this case were in a position of "willful ignorance" whereby they had the means to narrow the focus of their search but deliberately chose not to avail themselves of those means. Further, given the fact that both Reich and defendant denied knowing what was in the bag, we cannot say that the officers had probable cause to search only Reich and not defendant. We conclude that the facts of this case would lead

a reasonably prudent person standing in the officers' shoes to conclude that defendant had committed the crime of possessing contraband. Accordingly, we affirm the trial court's determination that probable cause existed to search defendant incident to arrest.

For the reasons stated, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

HUTCHINSON, P.J., and GROMETER, J., concur.