THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JUAN BURKS *et al.*, Defendants-Appellees.

Third District   Nos. 3—03—0162 through 3—03—0164 cons.

Opinion filed October 18, 2004.—Modified on denial of rehearing March 10, 2005.

LYTTON, J., specially concurring.

752

Jeff Tomczak, State's Attorney, of Joliet (Lawrence M. Bauer and Richard T. Leonard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Sherry R. Silvern, of State Appellate Defender's Office, of Ottawa, for appellees.

JUSTICE SCHMIDT delivered the opinion of the court:

The defendants, Juan Burks, Romell Ratliff, and Larry Fletcher, were arrested and charged with attempted armed robbery. 720 ILCS 5/8—4(a), 18—2(a) (West 2002). Their cases were consolidated for the purpose of a motion to quash the arrests and suppress the evidence. The trial court granted the motion and suppressed the evidence on the ground that the officers did not have probable cause to arrest the defendants. The State appeals, and we reverse.

## I. FACTS

At the suppression hearing, Illinois State Police Sergeant Terry Shaw testified that he had investigated a series of similar armed robberies of patrons of Harrah's Casino in Joliet. The victims were robbed by black males who used pepper spray and some type of blunt object.

The first victim was robbed at her residence on December 18, 2001. She had been gambling in the "high stakes area" of the casino that evening. When she arrived home, she was approached by black males, sprayed with pepper spray, and robbed of her money. The second robbery occurred on December 21, 2001. Like the first victim, this victim had also been gambling in the "high stakes area" of Harrah's. Before leaving the casino, he placed his winnings in the pocket of his jacket. Later that evening, the victim was robbed at his residence. The perpetrators approached him and asked him for his money and his wallet. The victim gave the robber his wallet, but the robbers demanded the money from the pocket of his jacket.

On February 11, 2002, another robbery occurred. The victim had been gambling in the "high stakes area" of Harrah's and was attacked in the driveway of his home. On March 1, 2002, a fourth victim was robbed in the garage area of his residence in Downers Grove.

Two weeks later, another Harrah's patron, Luisa Tsui, was robbed at her home after she had been gambling in the "high stakes area." A Harrah's videotape of Tsui was reviewed to identify any possible

suspects. The tape showed a black female following Tsui throughout the casino. At one point, the suspect, Cheronder Blanchard, followed the victim into the bathroom. After reviewing the tape, several agencies initiated stationary and mobile surveillance within the casino to monitor Blanchard and any possible victims.

On the evenings of March 18 and 19, 2001, Blanchard returned to the casino. The casino monitors indicated that Blanchard positioned herself so that she could play at different tables or slot machines while she watched the entrance or exit of the "high stakes area." Blanchard followed the potential victims out of the "high stakes area." She then went to the parking lot and got into a black Nissan with tinted windows. On both evenings, she waited for the victims to leave the parking garage and followed them for awhile. She eventually lost sight of their vehicles. Shaw testified that Blanchard appeared to have a passenger with her in the front passenger seat of the car.

On March 22, Blanchard again returned to Harrah's and again watched as her victim, Dillon Bates, gambled in the "high stakes area." Shaw testified that after Bates left the casino, he took an unusual route to his apartment in Bolingbrook. Blanchard followed Bates to his apartment. As she drove into the complex parking lot, her vehicle was blocked by police squad cars. Blanchard and the defendants, along with another codefendant, were removed from the car at gunpoint and handcuffed. Blanchard's car was searched after the defendants were arrested. A jack handle and a can of pepper spray were recovered from the passenger compartment.

On cross-examination, Shaw admitted that he did not know there were passengers in the backseat of the car when the vehicle was stopped. He also stated that there were no warrants to arrest any of the people in the vehicle.

On October 4, 2002, the trial court granted the motion to quash the arrest as to the defendants. However, the court denied the motion as to Blanchard. On October 21, 2002, the State filed a motion seeking a statement of facts supporting the ruling. On October 29, 2002, the State filed the first of two motions to reconsider. Pursuant to the State's motions, at a November 22, 2002, hearing the judge stated that the officers had not observed the defendants do anything. They were simply passengers, and no items had been recovered from their persons. The judge noted that the jack handle and the pepper spray were recovered from inside the vehicle after the defendants were placed under arrest. The court found that the defendants were arrested without probable cause. The judge found, however, that probable cause existed to arrest Blanchard since she had been seen on camera following Bates and other intended victims out of the casino. The trial judge also denied the State's motion to reconsider.

The State filed a second motion to reconsider. It argued that the pepper spray and jack handle should be admitted at the defendants' trials under the doctrine of inevitable discovery since the evidence would have been legally seized as a search incident to Blanchard's arrest. The trial judge agreed that the evidence was lawfully seized as to Blanchard but found no probable cause to arrest the defendants. The judge stated, "It is the arrest that is the problem and not necessarily the search." The motion was denied.

## II. ANALYSIS

On appeal, the State argues that the trial court erred in suppressing the evidence as "fruit of the poisonous tree" because the police had probable cause to arrest the defendants. The defendants disagree, and also contend that this court lacks jurisdiction to hear the State's appeal. We first address the defendants' jurisdiction argument.

### A. Jurisdiction

The defendants argue that the appeal was not timely filed and, for that reason, we lack jurisdiction.

■ A motion for reconsideration of a suppression order is an appropriate means for directing the attention of a trial judge to a claim of error and may be filed within 30 days of the entry of the order being challenged. *People v. Van Matre*, 164 Ill. App. 3d 201, 517 N.E.2d 768 (1988). When such a motion for reconsideration has been seasonably filed, the time for appeal does not commence until that motion has been denied. *Van Matre*, 164 Ill. App. 3d 201, 517 N.E.2d 768. The State then has 30 days to appeal that decision, as specified by Supreme Court Rule 606(b) (188 Ill. 2d R. 606(b)).

In this case, the State first moved for reconsideration and for a statement of facts supporting the October 4, 2002, suppression order within 30 days of its entry. Pursuant to the State's motions, the court stated its findings of fact for granting the motion and reaffirmed its decision at a November 22, 2002, hearing. It was on this date that the clock began to run on any State appeal. See *Van Matre*, 164 Ill. App. 3d 201, 517 N.E.2d 768. The State failed to file a timely notice of appeal prior to the December 22, 2002, deadline prescribed by Rule 606(b).[1]

■ That failure did not end the matter, however, as the State could still request leave to file a belated appeal. Under the terms of Supreme

---

[1]The defendants are correct in noting that the State's second motion to reconsider was not authorized and did nothing to toll the time for the State to appeal the trial court's decision. *People v. Clark*, 314 Ill. App. 3d 181, 732 N.E.2d 680 (2000). Therefore, we do not consider it in our analysis here.

Court Rule 606(c) (188 Ill. 2d R. 606(c)), any party, upon proper showing, may apply by motion in the appellate court for leave to file a late notice of appeal. If the motion is made within 30 days of the expiration of the 30-day time limit of Rule 606(b), it need be supported only by a showing of reasonable excuse for failure to file a timely notice of appeal. If the motion is filed after 30 days but within 6 months of the expiration of the time limit of Rule 606(b), the motion must be supported by an affidavit showing that there is merit to the appeal and the failure to file was not due to the appellant's culpable negligence. 188 Ill. 2d R. 606(c).

■ The defendants maintain that the State did not timely exercise this option. They argue that the request should have been made within six months after the November 22, 2002, denial of the State's motion to reconsider, or by May 22, 2003. The defendants therefore contend that the State's May 30, 2003, request for leave to file a late notice of appeal was untimely. We disagree.

The plain language of Rule 606(c) provides that any such request must be filed within 6 months of the expiration of the initial 30-day appeal period, *not* within 6 months of the order appealed from. Thus, in this case the six-month period provided for in Rule 606(c) did not begin to run until December 22, 2002. As a result, the State had until June 22, 2003, to make such a request in this court. The State requested such leave on May 30, 2003, in a motion supported by an affidavit attesting to the fact that there is merit to the appeal and the failure to file was not due to the State's culpable negligence. We then exercised our discretion to grant the State's motion on June 23, 2003. The State's appeal is thus properly before this court, and we turn to the merits of this appeal.

## B. Probable Cause

### 1. Standard of Review

The ruling of a trial court on a motion to quash an arrest and suppress the evidence frequently presents mixed questions of fact and law. A trial court's factual findings concerning the motion will be reversed only if they are manifestly erroneous. *People v. Welling*, 324 Ill. App. 3d 594, 755 N.E.2d 1049 (2001). However, the trial court's ultimate legal ruling on a motion to quash and suppress is reviewed *de novo*. *Welling*, 324 Ill. App. 3d 594, 755 N.E.2d 1049.

### 2. Discussion

■ A warrantless arrest will be deemed lawful only when probable cause to arrest has been proven. *People v. Robinson*, 167 Ill. 2d 397, 657 N.E.2d 1020 (1995). Probable cause exists when the facts known

to the officer at the time of the arrest are sufficient to lead a reasonably cautious person to believe that the person arrested has committed a crime. *In re D.G.*, 144 Ill. 2d 404, 581 N.E.2d 648 (1991). The existence of probable cause to arrest depends upon the totality of the circumstances at the time of the arrest. *People v. Sims*, 192 Ill. 2d 592, 736 N.E.2d 1048 (2000).

The trial court found that there was no probable cause to arrest the three male defendants. We disagree. The police knew that all of the victims had been gambling at Harrah's Casino in the "high stakes area." The police knew that the victims had been robbed, not by a black female, but by black males. The police were aware that the driver of the car, a female, Cheronder Blanchard, had followed several people from the "high stakes area" of Harrah's on prior occasions. The police knew that Blanchard had followed prior victim Luisa Tsui into a bathroom at the casino and then later out of the casino, before Ms. Tsui was ultimately robbed by black males. The police knew that the defendants in this case sat in Blanchard's vehicle, in a parking lot across from the casino, while Blanchard entered the casino alone on March 22, 2002. Once inside the casino, Blanchard acted in the same manner as she had on prior occasions, that is, by waiting for an individual to leave the "high stakes area" of the casino and follow him or her.

On the night in question, Blanchard followed Dillon Bates. The police knew that Blanchard followed Bates out of the casino and then Blanchard's vehicle followed Bates to Bolingbrook, despite the fact that the Bates vehicle took a rather circuitous route from Harrah's to Bolingbrook. The police knew that Blanchard's vehicle followed Dillon Bates' car into the parking lot of his residence in Bolingbrook. In light of all of this evidence, especially in light of the fact that the prior robberies had been committed by males, the police had reason to believe that the male occupants of the Blanchard vehicle were about to rob Dillon Bates and that the male occupants were more than "simply passengers."

On petition for rehearing, defendants argue that our reasoning is flawed because police did not know the identities of the passengers of the Blanchard vehicle until police stopped it. This argument misses the mark. Because the car had been under surveillance, police knew that whoever was in the car had been in it while Blanchard was in the casino. For purposes of this probable cause determination, the fact that the police did not know the identities or even number of occupants in the vehicle is irrelevant. The trial judge found it significant that the pepper spray and jack handle were found inside the vehicle and not taken off the person of any of the defendants. Since the

defendants were ordered out of the vehicle at gunpoint, it hardly seems surprising that none of them exited with a jack handle or can of pepper spray in his hands.

Determination of the existence of probable cause is a common-sense determination, not a technical legal determination. The probabilities at issue in a probable cause determination are the factual and practical considerations of everyday life on which reasonable men, not legal technicians, act. *People v. Hebel*, 174 Ill. App. 3d 1, 527 N.E.2d 1367 (1988). Determinations of probable cause are naturally based on probabilities, and a finding of probable cause does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime. *United States v. Funches*, 327 F.3d 582 (7th Cir. 2003).

■ Based on all of the evidence available to the police, they had probable cause to believe that the occupants of the Blanchard vehicle were about to rob Dillon Bates. Clearly, there was probable cause to arrest the defendants. By following Bates from the casino to his home, they had taken a substantial step toward completion of the intended robbery. Police did not need to wait until the victim was robbed and possibly injured or killed (a jack handle can be a deadly weapon) before acting. The trial court therefore erred when it quashed the arrest of the defendants and granted the motion to suppress evidence against them.

■ Even had there been no probable cause to arrest defendants at the scene, the court erred when it suppressed the evidence. The exclusionary rule prevents the government from using evidence obtained in violation of a constitutional right. See, *e.g.*, *Mapp v. Ohio*, 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684 (1961). The evidence was not seized as a result of the defendants' arrest. The court had already ruled that the evidence was legally seized during the search of Blanchard's vehicle pursuant to her lawful arrest. Therefore, it was *not* the fruit of an unlawful search. It was simply a *non sequitur* to then turn around and suppress the evidence as to these defendants.

### III. CONCLUSION

For the foregoing reasons, the order of the circuit court of Will County is reversed and this cause remanded for further proceedings consistent with this order.

Reversed and remanded.

JUSTICE LYTTON, specially concurring:

I concur with that part of the majority's opinion that finds the police had probable cause to arrest the defendants.

A person commits attempted armed robbery when, "with intent to commit [armed robbery], he does any act which constitutes a substantial step toward the commission of that offense." 720 ILCS 5/8—4(a) (West 2002). Armed robbery is the taking of property from another person by the use of force or threat of force while armed with a dangerous weapon. 720 ILCS 5/18—1(a), 18—2(a)(1) (West 2002). Based on the facts recited in the majority opinion (see 355 Ill. App. 3d at 754-55), it was reasonable for the police officers to conclude that defendants' next action would be to exit the car and rob Mr. Bates. Thus, the officers had probable cause to believe that defendants intended to rob Mr. Bates and had taken a substantial step toward robbing Mr. Bates, committing the offense of attempted armed robbery.

JUSTICE McDADE, dissenting:

I believe the decision of the Will County circuit court was correct for the reasons stated by the court and I, therefore, dissent from the contrary decision of the majority.

Following a hearing on the pertinent facts and law, the trial court quashed the arrest of the three named defendants and suppressed the use of the jack handle and pepper spray *as to them*. In so ruling, the court explicitly found that the police lacked probable cause to arrest them and that the two items of "evidence" were not actually in the possession of these defendants.

The investigation team had monitored Cheronder Blanchard watching the "high stakes area" of Harrah's Casino on March 18 and 19, 2001, after having observed her apparently surveilling one of the earlier robbery victims in the casino on or about March 15. (Although that person was later robbed, the police could only conjecture that Blanchard was involved in any way.) After Blanchard left the casino on the nights of March 18 and 19, she was followed by police who speculated she had been tracking a victim each night but had lost both of them. The fact is that neither "victim" Blanchard "followed" on those two nights was robbed by her or by anyone else. The officers who were trailing her thought Blanchard had a passenger in her front seat on those dates. Their testimony provides no indication that they knew or suspected the presence of additional passengers in the car on either of those nights.

On March 22, Blanchard was again seen observing persons in the casino. She then "followed" a man who had been gambling in the "high stakes area" of the casino. When she pulled into the putative victim's apartment complex, her vehicle was blocked by the police and she and her four passengers were removed from the car at gunpoint

and handcuffed. A search of the vehicle after their arrest yielded a jack handle and a can of pepper spray from the passenger compartment.

On these facts, the majority finds probable cause to arrest these defendants for attempted armed robbery despite the fact—as noted by the trial court—that they were not armed. Nor were they shown to have done anything but sit in the backseat of Blanchard's car while she allegedly cased the casino and drove to the possible scene of a possible robbery.

In my opinion, the police did not have probable cause to arrest Burks, Ratliff or Fletcher. There were also no warrants to either arrest or search any occupants of the car, presumably because the police knew that their speculation and conjecture did not constitute the requisite probable cause. The police had previously followed Ms. Blanchard and had a hunch what she might have been up to. They knew they were going to follow her again and that, if they were fortunate, they would catch her or another "in the act." If they had waited for one or more of the passengers to get out of the car and move away from it with a weapon (or even for the car to stop), they might have actually had probable cause to arrest and to search. As it is, they had, at the absolute best, a reasonable suspicion permitting a pat-down, which on our facts would have revealed nothing to create probable cause.

Nor was probable cause created by the subsequent discovery of the pepper spray and jack handle. It is not so improbable that either of these items might be found in a car that one can assume that an innocent or unsuspecting person seeing them (if indeed the defendants had seen them at all) would leap to the conclusion that they would be used in a robbery and would refuse to ride in the vehicle. Many people, and particularly many women, carry pepper spray in their cars and on their persons for defense. And while it might not be common to find the jack handle in the front seat area of a car, it *is* an automotive implement and placement inside the car for a proper purpose is not impossible (or even inherently improbable).

Assuming for purposes of argument that the officers had probable cause to arrest Blanchard and that the items were properly seized pursuant to her proper arrest, that fact does nothing to prove either that they were used in the earlier robberies at all or, if they had been, that any of these three defendants knew of or participated in that use or that they were going to be used by one or more of the defendants in a robbery on March 22. These defendants could have done nothing more egregious than be in the wrong place at the wrong time with suggestive items in their general vicinity.

760

I do not believe the State has shown that there was probable cause to arrest these defendants, nor do I believe the jack handle and pepper spray were shown to be tied to them. I would affirm the decision of the trial judge quashing the arrests and suppressing the evidence as to them.