**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 200066-U

Order filed January 19, 2022

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-20-0066 Circuit No. 19-CF-66 |
| | ) | |
| DURAN K. GLADNEY, | ) ) | Honorable Kevin W. Lyons, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE LYTTON delivered the judgment of the court.
Justices Hauptman and Holdridge concurred in the judgment.

**ORDER**

¶ 1     *Held*: Defendant's convictions for unlawful possession with intent to deliver heroin, unlawful possession with intent to deliver cocaine, and unlawful possession of a weapon by a felon are reversed where the State failed to prove beyond a reasonable doubt that defendant knowingly possessed the seized contraband.

¶ 2     Defendant, Duran K. Gladney, appeals from his convictions for unlawful possession with intent to deliver heroin, unlawful possession with intent to deliver cocaine, and unlawful possession of a weapon by a felon. On appeal, he argues that (1) the trial court erred in denying

his motion to suppress because the sworn complaint requesting a search warrant failed to establish the requisite probable cause to justify issuance of a search warrant, (2) evidence presented in support of his convictions at trial was insufficient to prove that he had constructive possession of the seized contraband, and (3) trial counsel committed multiple substantive and procedural errors that deprived him of a fair trial. We find that the State failed to prove beyond a reasonable doubt that defendant knowingly possessed the contraband seized from the residence and reverse the trial court's judgment.

¶ 3                                          I. BACKGROUND

¶ 4        Defendant was charged by indictment with two counts of unlawful possession with intent to deliver a controlled substance (heroin and cocaine) (720 ILCS 570/401(a)(1)(A), (a)(2)(A) (West 2018)), two counts of unlawful possession of a controlled substance (heroin and cocaine) (*id*. §§ 402(a)(1)(A), (a)(2)(A)), and one count of unlawful possession of a weapon by a felon (*id*. § 24-1.1(a)), stemming from evidence seized pursuant to a search warrant served at 2121 West Kellogg Avenue in Peoria.

¶ 5        Defendant filed a motion to quash the warrant and suppress the evidence, requesting the suppression of the contraband collected during the search. In the motion, defendant alleged that the search warrant was "too bare bones" to establish probable cause for its issuance. Specifically, he alleged that the information presented to the warrant judge failed to establish the confidential informant's reliability and a nexus between the criminal offense and the place to be searched.

¶ 6        Defendant attached a copy of the search warrant and the search warrant complaint to his motion. Officer David Logan presented the complaint to the warrant judge on January 26, 2019. In his complaint, Logan requested a search warrant for the premises located at "2121 W Kellogg Avenue," a single family residence, and the person of defendant, "a/k/a D Boy," Logan described

2

the residence and defendant and averred that he expected to find heroin, currency, and drug related paraphernalia in the house. The complaint further stated that Logan had interviewed Jane Doe, a confidential source, and had attached her affidavit in support of the complaint.

¶ 7  The complaint provided that Jane Doe first contacted Logan on January 17, 2019, and informed him that a man, known to her as "D Boy," was selling heroin at a house located on NE Perry Street. Logan drove past the house and established that the address was 811 NE Perry Street. After further research, he discovered that defendant's address of record was 811 NE Perry Street. Defendant's physical description matched the description of D Boy given by Jane Doe. On January 25, 2019, Jane Doe contacted Logan again. This time, she informed him that D Boy was using 2121 West Kellogg Avenue as a "stash house," and was selling heroin there. Jane Doe stated that she saw D Boy inside 2121 West Kellogg Avenue with several grams of a tan, rock-like substance, which she knew to be heroin. Jane Doe also stated that she saw heroin packaged for sale inside the residence. Logan and another officer drove Jane Doe past the West Kellogg residence. She confirmed that the house at 2121 West Kellogg Avenue was the residence where she witnessed D Boy selling heroin, and she identified defendant from a photo lineup as the man she referred to as "D Boy." In her attached affidavit, Jane Doe stated that she had witnessed D Boy in possession of heroin at 2121 West Kellogg within the last 72 hours.

¶ 8  Following a hearing, the trial court issued a written order denying defendant's motion to suppress and set the matter for trial.

¶ 9  At trial, Logan testified that officers executed the search warrant on the afternoon of January 26, 2019. During the course of the search, they found several small plastic baggies, multiple foil packets, and a handgun underneath a dresser in one of the bedrooms. The baggies and packets contained a light brown substance, believed to be heroin, and a white chunky substance,

believed to be cocaine. Logan testified that while officers searched the house, the current tenant, Kimberly Harper, arrived in her vehicle. Officer searched her vehicle as well and found what appeared to be heroin in her purse.

¶ 10        Officer Matthew Lane testified that no one answered the door when he and other officers knocked at the residence to execute the search warrant. Officers then "breached" the door. Inside the residence, they found foil packets containing suspected heroin, multiple plastic baggies containing a white substance, and a Glock semiautomatic pistol under a bedroom dresser. Officer Lane testified that the video of the search of the bedroom showed that the baggies and handgun were revealed after officers removed the bottom drawer from a tall tan dresser just inside the bedroom door. A blue duffel bag, containing defendant's social security card, was on the floor next to the dresser. Officers also observed several articles of men's clothing, a heroin "user's kit," and a digital scale in the bedroom. As the search continued, officers found a bag of unused plastic baggies, a box of partially torn aluminum foil, and a scale in the kitchen.

¶ 11        Peoria Police Officer Jacob Beck testified that he reported to the scene and collected all the items recovered from 2121 West Kellogg. He explained that the bag containing the baggies and foil packages was found under the tall dresser. All the drawers had to be removed before the bag of drugs could be revealed. Officer Beck also clarified that defendant's social security card was found inside the blue duffel bag.

¶ 12        Officer Nick Mason testified that, while officers searched the residence in question, he arrested defendant at another location. He found $476 and a key on defendant's person. Officer Mason later used the key to successfully unlock the door at 2121 West Kellogg.

¶ 13        Harper testified that she used heroin for about 15 years and was going to treatment for her addiction. She had known defendant for quite a while because she bought heroin from him. She

4

arrived home as the search warrant was being executed, and officers arrested her after finding heroin in her purse. She was cooperating with investigators in exchange for a deal with the State's Attorney's office in the hopes of regaining custody of her children.

¶ 14     Harper testified that a few weeks before officers searched her house, she ran into defendant at the store, and they exchanged numbers. Defendant contacted her shortly after that and said he was having issues with his family. He asked if he could stay at her house "once in a while." She said that he could and gave him a key. Harper testified that defendant "didn't sleep there every night or anything, just a few times."

¶ 15     The day before officers executed the search warrant, defendant returned to Harper's house following a trip to Kentucky. He brought a blue duffel bag with his clothes in it and put it in Harper's bedroom. Harper testified that she had previously offered defendant the use of a dresser and the bedroom closet. She explained that there were two dressers in her bedroom, a tall tan one and a black one, and she kept her clothes in both of them. She told defendant that he could use the tall dresser.

¶ 16     The night before the search warrant was executed defendant showed up at Harper's house with several friends. Harper purchased $20 worth of heroin from defendant. He showered and listened to music with his friends, and then they all left. Defendant did not spend the night at Harper's house that evening. He returned the next morning, January 26, 2019, with his aunt. Harper had a short conversation with defendant in the living room, and then he left. Defendant did not go in her bedroom.

¶ 17     On cross-examination, Harper testified that she still kept personal clothing items in the tall dresser that she offered to defendant. When the officers searched the dresser, the drawers contained

her lingerie, swimsuits, and pajamas. Harper denied ownership of the gun that was found under the dresser. She also stated that she had never seen defendant with a gun.

¶ 18　　　　Pamela Passolano, a forensic scientist with the Illinois State Police, testified that she tested the substances found in the foil packages and the small plastic baggies. There were a total of 50 small foil packets inside 5 larger foil packages. The substance in those packages testified positive for heroin, and the chunky white substance found in the plastic baggies tested positive for cocaine. Officer John Foster, an officer with the Peoria crime scene unit, testified that he swabbed the handgun and conducted fingerprint testing on the packages of heroin and cocaine but found no identifiable prints.

¶ 19　　　　At the conclusion of the witnesses' testimony, the parties stipulated that defendant had a prior felony conviction.

¶ 20　　　　The jury found defendant guilty of unlawful possession with intent to deliver heroin, unlawful possession with intent to deliver cocaine, and unlawful possession of a weapon by a felon. Following a sentencing hearing, the trial court sentenced defendant to concurrent terms of imprisonment of 22 years, 8 years, and 8 years, respectively.

¶ 21　　　　　　　　　　　　　　　　II. ANALYSIS

¶ 22　　　　On appeal, defendant raises three contentions of error: (1) the trial court erred in denying his motion to suppress based on a deficient search warrant; (2) the State failed to present sufficient evidence to support his convictions; and (3) multiple errors committed by defense counsel denied him a fair trial. Because we find that his challenge to the sufficiency of the evidence is dispositive, we address it first.

¶ 23　　　　When faced with a challenge to the sufficiency of the evidence, it is not the function of the reviewing court to retry the defendant. *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006); *People*

*v. Collins*, 106 Ill. 2d 237, 261 (1985). Rather, viewing the evidence in the light most favorable to the prosecution, a reviewing court is tasked with determining whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Sutherland*, 223 Ill. 2d at 242. It is the responsibility of the trier of fact to determine the credibility of the witnesses, to weigh the witnesses' testimony, to resolve conflicts in the evidence, and to draw reasonable inferences that flow from the evidence. *People v. Williams*, 193 Ill. 2d 306, 338 (2000). A defendant's conviction will be overturned based on insufficient evidence only where the proof is so improbable or unsatisfactory that a reasonable doubt as to the defendant's guilt remains. *Id.*

¶ 24    To sustain a conviction for unlawful possession of a weapon by a felon, the State must prove beyond a reasonable doubt that the defendant knowingly possessed a firearm and has been convicted of a prior felony. 720 ILCS 5/24-1.1(a) (West 2018). To sustain a conviction for unlawful possession of heroin or cocaine, the State must prove beyond a reasonable doubt that the defendant knowingly and unlawfully possessed 15 grams or more of the controlled substance. *Id*. §§ 401(a)(1)(A), (a)(2)(A). Both statutes require proof of possession of the contraband in question to obtain a conviction.

¶ 25    Proof of possession of contraband requires the State to demonstrate that (1) the defendant had knowledge of the presence of the contraband, and (2) the contraband was in the defendant's immediate and exclusive control. *People v. Tates*, 2016 IL App (1st) 140619, ¶ 19. Possession may be actual or constructive and is often proved with circumstantial evidence. *People v. Love*, 404 Ill. App. 3d 784, 788 (2010).

¶ 26    "Constructive possession exists where there is no actual, personal, present dominion over the contraband, but defendant had knowledge of the presence of the contraband, and had control

7

over the area where the contraband was found." *People v. Hunter*, 2013 IL 114100, ¶ 19. Knowledge may be inferred from the surrounding circumstances, such as the defendant's actions, declarations, or other conduct, which indicate that the defendant knew the contraband existed in the place where it was found. *People v. McLaurin*, 331 Ill. App. 3d 498, 502 (2002); *People v. Minniweather*, 301 Ill. App. 3d 574, 578 (1998). Control is established when the defendant has the capability and intent to maintain dominion and control over the contraband. *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17. Proof that a defendant had control over the premises where the contraband is found gives rise to an inference of knowledge and possession of the contraband. *People v. Givens*, 237 Ill. 2d 311, 335 (2010).

¶ 27        Constructive possession is not diminished by evidence of others' access to contraband. *Id*. at 338. Nevertheless, "[w]here there is no evidence that the defendant controls the premises, proof of mere presence, even combined with defendant's knowledge of [contraband], will not support a finding of constructive possession unless there is other circumstantial evidence of defendant's control over the contraband." *Tates*, 2016 IL App (1st) 140619, ¶ 20.

¶ 28        Habitation of the location where contraband is found can constitute sufficient evidence of control to establish constructive possession. *People v. Maldonado*, 2015 IL App (1st) 131874, ¶ 29; *Spencer*, 2012 IL App (1st) 102094, ¶ 17. Evidence of habitation often takes the form of rent receipts, utility bills, or mail. *People v. Fernandez*, 2016 IL App (1st) 141667, ¶ 19. Possessing keys to a residence may constitute evidence of constructive possession. *People v. Chicos*, 205 Ill. App. 3d 928, 935 (1990). However, a conviction cannot be based solely on the possession of keys to a residence. *Fernandez*, 2016 IL App (1st) 141667, ¶ 21; *People v. Orta*, 361 Ill. App. 3d 342, 349 (2005).

¶ 29    Here, the evidence supporting defendant's constructive possession of the drugs and the handgun is minimal. It is undisputed that defendant was not in the residence at the time the evidence of criminal activity was discovered. Defendant's absence meant defendant did not have immediate access to the area within the residence where the controlled substance and firearms were seized. Moreover, the evidence did not establish that defendant inhabited the location where the contraband was found. No bills or mail in defendant's name were found at the residence. Although defendant possessed a key to the house, a conviction based solely on the possession of a key cannot stand. See *Fernandez*, 2016 IL App (1st) 141667, ¶ 21. Under these facts, a reasonable person would not be able to conclude that defendant had exclusive control over the residence such that defendant could be found to have knowingly possessed the contents of the residence.

¶ 30    Moreover, the State cannot meet its burden of proof regarding constructive possession by introducing circumstantial evidence tying defendant to the controlled substances or the firearm. *Cf. Minniweather*, 301 Ill. App. 3d at 578 (evidence that defendant hid from police, drugs were found within feet of where defendant was hiding, and no one else was seen in the area provided strong circumstantial evidence sufficient to prove constructive possession). The investigation did not reveal defendant's fingerprints or DNA on the bags of heroin and cocaine or on the handgun. There was no direct evidence showing defendant touched or actually possessed any of the items. And there was little, if any, circumstantial evidence to support a reasonable inference that defendant intended to exercise control over the contraband. Defendant was not found in close proximity to the contraband (officers arrested him blocks away during execution of the search warrant), and he was not the last person seen in the area where the contraband was located.

¶ 31    In this case, defendant was one of multiple individuals inside Harper's residence in the days leading up to the execution of the search warrant. Harper's uncontroverted testimony

9

established that defendant was not living at 2121 West Kellogg and did not have exclusive control over the dresser where officers discovered the contraband. Further, there were no identifiable prints recovered from the packaged heroin, the baggies of cocaine, or the handgun. Absent defendant's presence at 2121 West Kellogg on the morning of January 26, 2019, there is no evidence linking defendant to the controlled substances or the firearm. Such evidence is insufficient to support defendant's convictions for possession.

¶ 32 Because we reverse defendant's convictions, we need not address the remaining issues raised on appeal.

¶ 33 III. CONCLUSION

¶ 34 Defendant's convictions and the judgment of the circuit court of Peoria County are reversed.

¶ 35 Reversed.