NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241264-U

NO. 4-24-1264

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 15, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Respondent-Appellee, | ) | Circuit Court of |
| v. | ) | Peoria County |
| DURAN K. GLADNEY, | ) | No. 22MX257 |
| Petitioner-Appellant. | ) | |
| | ) | Honorable |
| | ) | Paul P. Gilfillan, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Grischow and Cavanagh concurred in the judgment.

**ORDER**

¶ 1     *Held*: The appellate court affirmed an order denying a petition for a certificate of innocence. The trial court reasonably found that petitioner failed to prove his innocence by a preponderance of the evidence. The trial court also acted within its discretion by questioning petitioner during the hearing on the petition.

¶ 2     In February 2019, a grand jury indicted petitioner, Duran K. Gladney, on two counts of unlawful possession with intent to deliver a controlled substance (heroin and cocaine) (720 ILCS 570/401(a)(1)(A), (a)(2)(A) (West 2018)), two counts of unlawful possession of a controlled substance (heroin and cocaine) (720 ILCS 570/402(a)(1)(A), (a)(2)(A) (West 2018)), and one count of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2018)). A jury found petitioner guilty of the weapons charge and guilty of possessing both heroin and cocaine with the intent to deliver. The trial court, Judge Kevin Lyons presiding, sentenced petitioner to a total of 22 years in prison. On direct appeal, the Third District reversed the convictions, holding

that the State failed to prove beyond a reasonable doubt that petitioner constructively possessed the contraband. *People v. Gladney*, 2022 IL App (3d) 200066-U, ¶ 2. Petitioner subsequently filed a petition seeking a certificate of innocence pursuant to section 2-702 of the Code of Civil Procedure (Code) (735 ILCS 5/2-702 (West 2022)). The court, Judge Paul Gilfillan presiding, denied this petition. Petitioner appeals, and we affirm.

¶ 3                                    I. BACKGROUND

¶ 4                                 A. The Trial Evidence

¶ 5         We will restate and incorporate the summary of the trial evidence provided in the decision in petitioner's direct appeal with slight modifications to provide clarity for the reader. See *Gladney*, 2022 IL App (3d) 200066-U, ¶¶ 9-20.

¶ 6         Officer David Logan testified that officers executed a search warrant for a single-family home located at 2121 West Kellogg Avenue in Peoria, Illinois on the afternoon of January 26, 2019. During the course of the search, they found several small plastic baggies, multiple foil packets, and a handgun underneath a dresser in one of the bedrooms. The baggies and packets contained a light brown substance, believed to be heroin, and a white chunky substance, believed to be cocaine. Logan testified that while officers searched the house, the current tenant, Kimberly Harper, arrived in her vehicle. Officers searched her vehicle and found what appeared to be heroin in her purse.

¶ 7         Officer Matthew Lane testified that no one answered the door when he and other officers knocked at the residence to execute the search warrant. Officers then "breached" the door. Inside the residence, they found foil packets containing suspected heroin, multiple plastic baggies containing a white substance, and a Glock semiautomatic pistol under a bedroom dresser. Officer Lane testified that the video of the search of the bedroom showed that the baggies and handgun

were revealed after officers removed the bottom drawer from a tall tan dresser just inside the bedroom door. A blue duffel bag, containing petitioner's social security card, was on the floor next to the dresser. Officers also observed several articles of men's clothing, a heroin "user's kit," and a digital scale in the bedroom. As the search continued, officers found a bag of unused plastic baggies, a box of partially torn aluminum foil, and a scale in the kitchen.

¶ 8        Peoria Police Officer Jacob Beck testified that he reported to the scene and collected all the items recovered from 2121 West Kellogg. He explained that the bag containing the baggies and foil packages was found under the tall dresser. All the drawers had to be removed before the bag of drugs could be revealed. Officer Beck also testified that petitioner's social security card was found inside the blue duffel bag.

¶ 9        Officer Nick Mason testified that, while officers searched the residence in question, he arrested petitioner at another location. He found $476 and a key on petitioner's person. Officer Mason later used the key to successfully unlock the door at 2121 West Kellogg.

¶ 10        Harper testified that she used heroin for about 15 years and was going to treatment for her addiction. She had known petitioner for quite a while because she bought heroin from him. She arrived home as the search warrant was being executed, and officers arrested her after finding heroin in her purse. She was cooperating with investigators in exchange for a deal with the State's Attorney's office in the hopes of regaining custody of her children.

¶ 11        Harper testified that a few weeks before officers searched her house, she ran into petitioner at the store, and they exchanged numbers. Petitioner contacted her shortly after that and said he was having issues with his family. He asked if he could stay at her house "once in a while." She said that he could and gave him a key. Harper testified that petitioner "didn't sleep there every night or anything, just a few times."

¶ 12 The day before officers executed the search warrant, petitioner returned to Harper's house following a trip to Kentucky. He brought a blue duffel bag with his clothes in it and put it in Harper's bedroom. Harper testified that she had previously offered petitioner the use of a dresser and the bedroom closet. She explained that there were two dressers in her bedroom, a tall tan one and a black one, and she kept her clothes in both of them. She told petitioner that he could use the tall dresser.

¶ 13 The night before the search warrant was executed, petitioner showed up at Harper's house with several friends. Harper purchased $20 worth of heroin from petitioner. He showered and listened to music with his friends, and then they all left. Petitioner did not spend the night at Harper's house that evening. He returned the next morning, January 26, 2019, with his aunt. Harper had a short conversation with petitioner in the living room, and then he left. Petitioner did not go into her bedroom.

¶ 14 On cross-examination, Harper testified that she still kept personal clothing items in the tall dresser that she offered to petitioner. When the officers searched the dresser, the drawers contained her lingerie, swimsuits, and pajamas. Harper denied ownership of the gun that was found under the dresser. She also stated that she had never seen petitioner with a gun.

¶ 15 Pamela Passolano, a forensic scientist with the Illinois State Police, testified that she tested the substances found in the foil packages and the small plastic baggies. There was a total of 50 small foil packets inside 5 larger foil packages. The substance in those packages tested positive for heroin, and the chunky white substance found in the plastic baggies tested positive for cocaine. Officer John Foster, an officer with the Peoria crime scene unit, testified that he swabbed the handgun and conducted fingerprint testing on the packages of heroin and cocaine but found no identifiable prints.

¶ 16       At the conclusion of the witnesses' testimony, the parties stipulated that petitioner had a prior felony conviction.

¶ 17       The jury found petitioner guilty of unlawful possession with intent to deliver heroin, unlawful possession with intent to deliver cocaine, and unlawful possession of a weapon by a felon. Following a sentencing hearing, the trial court sentenced petitioner to concurrent terms of imprisonment of 22 years, 8 years, and 8 years, respectively.

¶ 18                              B. Petitioner's Direct Appeal

¶ 19       On direct appeal, after reciting the law concerning constructive possession, the appellate court reversed petitioner's convictions for lack of sufficient evidence, reasoning as follows:

"Here, the evidence supporting [petitioner's] constructive possession of the drugs and the handgun is minimal. It is undisputed that [petitioner] was not in the residence at the time the evidence of criminal activity was discovered. [Petitioner's] absence meant [petitioner] did not have immediate access to the area within the residence where the controlled substance and firearms were seized. Moreover, the evidence did not establish that [petitioner] inhabited the location where the contraband was found. No bills or mail in [petitioner's] name were found at the residence. Although [petitioner] possessed a key to the house, a conviction based solely on the possession of a key cannot stand. See [*People v.*] *Fernandez*, 2016 IL App (1st) 141667, ¶ 21. Under these facts, a reasonable person would not be able to conclude that [petitioner] had exclusive control over the residence such that [petitioner] could be found to have knowingly possessed the contents of the residence.

Moreover, the State cannot meet its burden of proof regarding constructive possession by introducing circumstantial evidence tying [petitioner] to the controlled substances or the firearm. *Cf.* [*People v. Minniweather*, 301 Ill. App. 3d 574, 578 (1998)] (evidence that defendant hid from police, drugs were found within feet of where defendant was hiding, and no one else was seen in the area provided strong circumstantial evidence sufficient to prove constructive possession). The investigation did not reveal [petitioner's] fingerprints or DNA on the bags of heroin and cocaine or on the handgun. There was no direct evidence showing [petitioner] touched or actually possessed any of the items. And there was little, if any, circumstantial evidence to support a reasonable inference that [petitioner] intended to exercise control over the contraband. [Petitioner] was not found in close proximity to the contraband (officers arrested him blocks away during execution of the search warrant), and he was not the last person seen in the area where the contraband was located.

In this case, [petitioner] was one of multiple individuals inside Harper's residence in the days leading up to the execution of the search warrant. Harper's uncontroverted testimony established that [petitioner] was not living at 2121 West Kellogg and did not have exclusive control over the dresser where officers discovered the contraband. Further, there were no identifiable prints recovered from the packaged heroin, the baggies of cocaine, or the handgun. Absent [petitioner's] presence at 2121 West Kellogg on the morning of January 26, 2019, there is no evidence linking [petitioner] to the controlled substances or the firearm. Such evidence is insufficient to support [petitioner's] convictions for possession."

*Gladney*, 2022 IL App (3d) 200066-U, ¶¶ 29-31.

¶ 20                                    C. Petition for a Certificate of Innocence

¶ 21          On April 11, 2022, petitioner filed a petition for a certificate of innocence. He did

not submit any new evidentiary material in his petition. The State filed a response to this petition,

arguing that, despite the reversal of the convictions, petitioner could not show he was innocent of

the offenses for which he was charged.

¶ 22                                    1. *The Evidentiary Hearing*

¶ 23          On July 26, 2024, the trial court held an evidentiary hearing on the petition.

Petitioner's counsel stated that petitioner intended to testify in support of his innocence. As part

of ascertaining how else petitioner planned to prove his innocence, the court asked petitioner's

counsel: "And you'll indicate that he will be able to establish his innocence by a preponderance of

the evidence by relying on the court record, which I can take judicial notice of and the appellate

court opinion, which I've read, along with anything else to come out in the hearing?" Petitioner's

counsel replied, "That's correct, Your Honor." However, the court never expressly said that it was

taking judicial notice of anything, and neither party expressly requested the court to do so.

¶ 24          Petitioner was the only witness. On direct examination by his own counsel,

petitioner testified as follows. He was never in possession of the drugs or the gun at issue in the

underlying case, and they were not his. Although he stayed overnight at the home at 2121 West

Kellogg (misidentified in the testimony as "2021 West Kellogg") once or twice, he never lived

there. Petitioner was never "aware that heroin, cocaine, or a gun were located within that house."

He never exercised "possession or dominion over those items whatsoever." Aside from having the

key to this house and staying there occasionally, he had no other connection with it.

¶ 25          The State declined the opportunity to cross-examine petitioner. The trial court then

asked petitioner's counsel whether petitioner requested "any additional evidence beyond the record." Petitioner's counsel responded, "No." The court indicated it preferred to allow for written closing arguments, as "some of this might be catching the State's Counsel by surprise." The court and the parties discussed timelines for submitting written closing arguments. The court said it would take the matter under advisement and set a status date within which to issue a decision.

¶ 26 Shortly thereafter, the trial court *sua sponte* reopened the proofs and questioned petitioner. Petitioner's counsel did not object. Upon examination by the court, petitioner testified as follows. "Kimberly Harp" (Harper), the tenant of the home where the drugs and gun were found, gave him a key to that house. Asked why she did so, petitioner responded:

> "Because I got into it, like, with my mother when I came home from Woodford County for driving on suspended license. Me and mama had some words, and she just gave me the key. She really wasn't there all the time to let me in, so she gave me the key to spend the night."

Petitioner had that key for 48 to 72 hours before the search warrant was executed. Apparently referencing petitioner's testimony on direct examination, the court asked petitioner, "And didn't you tell your attorney you stayed there one or two times?" Petitioner responded, "Yes, sir." Petitioner acknowledged that, within the three days that he had a key to the house, he stayed there two days. Asked whether he had "any idea what room the drugs and gun were found in," petitioner said the transcripts reflected that "they found it in her room like in dressers." According to petitioner, he slept on the couch in the house, not in the room where the contraband was found. He claimed that even though police officers said they found his duffel bag in a bedroom, he had left his bag by the front door.

¶ 27 On redirect examination, petitioner's counsel asked petitioner if he had any

knowledge of whether somebody had moved his bag. Petitioner responded:

> "I don't have no knowledge, but it was multiple people coming in up in that house. Like, I had a key, she had a key, and the landlord had a key. In the report she testified that she shared a car with her landlord. That was rented to her to the house. So, it was like multiple people running in and out of the house. So, to my knowledge, I don't have no knowledge if it had been moved, but I know I left it by the front door on the coat rack."

¶ 28　The trial court asked additional questions of petitioner. When asked who was at this house, besides him and Harper, in the three days when he had a key, petitioner responded, "I don't know her friends." However, petitioner saw other people staying in the basement "[d]uring the whole time [he] was coming and visiting frequently." Petitioner clarified that before he had a key to this house, he had not been "going over there" long, as he was released from jail a little more than a month before the search warrant was executed. Petitioner denied that he had been going to this house for about a month. Rather, he explained that he ran into Harper, who had previously been his friend, at Walmart three weeks after he was released from jail. He told Harper his situation about getting "into it with [his] parent," and they swapped phone numbers. He did not see Harper again until she told him he could spend the night at her house.

¶ 29　In his written closing argument, petitioner contended that the trial court should accept as true his unrebutted testimony, as it was neither contradicted, inherently improbable, nor impeached. Petitioner maintained that the circumstances pointed to Harper as the person who most likely possessed the contraband, and she could have faced charges under a constructive possession theory.

¶ 30　The State responded that although it did not meet its burden of proof in the criminal

trial, petitioner did not meet his burden of proof in the current proceedings to show that he was innocent of the charges. The State relied on the circumstantial evidence elicited at trial to connect petitioner to the contraband. The State seemed to suggest that the trial court had taken judicial notice of the entire underlying criminal record at the evidentiary hearing.

¶ 31    In his reply brief, petitioner indicated that he did not recall the trial court saying it was taking judicial notice of petitioner's "criminal convictions." Petitioner also questioned how he could be expected to prove his innocence, other than by offering his own unimpeached testimony that the contraband did not belong to him. He wondered why the "suspicious circumstances" that the State emphasized in its closing argument mattered if he was telling the truth and was not impeached.

¶ 32                              2. *The Trial Court's Ruling*

¶ 33    On September 24, 2024, the trial court issued a written order denying the petition for a certificate of innocence. The court indicated that it had "considered the entirety of the record herein, including the pleadings, testimony, case law, written closing arguments," and the decision in petitioner's direct appeal. The court identified the sole disputed issue as whether petitioner proved by a preponderance of the evidence that he was innocent of the offenses charged in the indictment.

¶ 34    The trial court recognized that the law-of-the-case doctrine established there was a reasonable doubt as to petitioner's guilt. The court also acknowledged that petitioner "made a credible argument as to his innocence" of the charges. Nevertheless, the court determined that petitioner had not met his burden on his petition because the proof and evidence was "equivocal" as to his innocence, "for one or more of the following non-exclusive reasons."

¶ 35    The trial court found that "all of the circumstances surrounding this fact situation

- 10 -

described in the appellate court opinion, Petitioner's testimony at hearing, and thoroughly discussed by the parties herein lead to a conclusion that [petitioner] may be guilty or innocent." In the court's view, the parties both had "a good argument" in support of their respective positions, "from a preponderance of the evidence standard." Petitioner had not "prevailed in proving more probably than not that he is innocent."

¶ 36      According to the trial court, the "entirety of the facts set out in the appellate opinion certainly paint a picture of circumstantial evidence that more than suggests the drugs and gun found at the scene were placed there by" petitioner. The court explained that due to petitioner's "interest in the case" and the court's "evaluation of his credibility," the fact that petitioner's testimony at the evidentiary hearing was unrebutted did not *ipso facto* mean he met his burden of proof. The court wrote that when all the evidence was considered, there was "still a question as to Petitioner's innocence" and this was a "50/50 case."

¶ 37      Responding to petitioner's rhetorical question in his closing argument about how someone could prove innocence other than through one's own testimony, the trial court imagined potential scenarios. This included eyewitnesses recanting their testimony, newly discovered alibi or DNA evidence, or "later admissions by a party that are supported by additional evidence." The court noted that it was "simply concluding that the burden of proof was not met in this case."

¶ 38      The trial court further explained that it did "not read the appellate opinion as establishing innocence was proven," even in "conjunction with" petitioner's testimony. The court also wrote:

"The indictment in Petitioner's criminal case (2019 CF 66) established probable cause (or reasonable grounds) for filing the charges therein. This court's ruling herein is consistent with a finding that [petitioner's] innocence (or guilt) of

these charges, after all is said and done in this case, is impossible to conclude to a standard or [*sic*] more likely than not—either way."

¶ 39    The trial court included some "[a]dditional notes" toward the end of its order. The court clarified that it did not consider petitioner's criminal record in ruling on this petition. The court also reiterated that it rejected petitioner's argument that it must accept his testimony as "true and determinative." On that point, the court stated:

> "[A]s laid out in comparison with the other facts of this case, this court cannot conclude that his testimony is inherently *probable*. Rather, when all is considered it is just one component of the circumstances in this case leading to this court's conclusion that he cannot show he is innocent more probably than not." (Emphasis in original.)

Finally, the court recognized that Harper "could also have been charged in this case." Nevertheless, "a fact finder could also reasonably conclude she was not a drug 'dealer,' but was an addict who obtained her drugs from Petitioner[,] whose movement between houses with contraband would not be out of the realm of possibilities."

¶ 40    Petitioner filed a timely notice of appeal from this order.

¶ 41                                    II. ANALYSIS

¶ 42    On appeal, petitioner argues that he proved his innocence by a preponderance of the evidence, so he is entitled to a certificate of innocence. According to petitioner, some of the statements the trial court made in its written order were "legally and factually incorrect." Petitioner also argues that the court erred by reopening the evidence and questioning him.

¶ 43    In response, the State argues that petitioner failed to establish his innocence by a preponderance of the evidence. The State asserts that petitioner's evidence consisted merely of

denying that he knew about or possessed the contraband. The State maintains that such testimony must be evaluated within the context of the circumstantial evidence adduced at trial. The State further argues that the trial court acted within its discretion by questioning petitioner at the evidentiary hearing.

¶ 44     Section 2-702 of the Code provides a mechanism for petitioners to be declared innocent of crimes so they may seek relief from the State through the court of claims for wrongful incarceration. 735 ILCS 5/2-702 (West 2022); *People v. Pursley*, 2022 IL App (2d) 210558, ¶ 63. To obtain a certificate of innocence, a petitioner must prove by a preponderance of the evidence that (1) he or she was convicted of a felony and served at least part of a prison sentence, (2) the conviction was reversed or vacated and the indictment dismissed, (3) the petitioner is innocent of the charged offenses, and (4) the petitioner's voluntary conduct did not bring about the conviction. *People v. Washington*, 2023 IL 127952, ¶ 50; 735 ILCS 5/2-702(g)(1)-(4) (West 2022). A preponderance of the evidence means that a proposition is "more probably true than not true." (Internal quotation marks omitted.) *People v. Terrell*, 2022 IL App (1st) 192184, ¶ 46.

¶ 45     Here, the sole disputed element is whether petitioner proved his innocence of the charged offenses by a preponderance of the evidence. The fact that the Third District reversed the convictions on direct appeal due to the State's failure to prove guilt beyond a reasonable doubt is not dispositive of this issue. See *People v. Pollock*, 2014 IL App (3d) 120773, ¶ 37 (explaining that "the Code contemplates the differences between actual innocence and a finding by a court of review that no rational jury could find beyond a reasonable doubt that the State proved all elements of the crimes charged"); see also *Terrell*, 2022 IL App (1st) 192184, ¶¶ 21, 67 (affirming a trial court's finding that a petitioner failed to prove his innocence, even though the convictions had been overturned on direct appeal based on insufficient evidence that he constructively possessed

- 13 -

drugs and weapons).

¶ 46                          A. The Appellate Record

¶ 47          At the outset, we deem it necessary to make a few remarks about the appellate record. The only materials we have from the underlying criminal proceedings are (1) the indictment, (2) a September 17, 2019, trial court order reflecting that a jury found petitioner guilty of three counts of the indictment, and (3) a copy of the Rule 23 order from the Third District (*Gladney*, 2022 IL App (3d) 200066-U).

¶ 48          Before the appellate record was filed, petitioner filed a motion in this court to include the entire record from his direct appeal as part of the record in this appeal. In his motion, petitioner asserted that the direct appeal record included the trial transcripts, "which were available to the circuit court before it rendered its decision in this case denying the petition for certificate of innocence." The State did not file a response to that motion. This court denied petitioner's motion without prejudice. We explained that a record on appeal "may only be supplemented with evidence that was actually before the trial court." We noted that the record had not yet been filed in the present appeal, so it was unknown whether the court either took judicial notice of the record from the direct appeal or whether that record was admitted into evidence. See 735 ILCS 5/2-702(f) (West 2022) (authorizing a court adjudicating a petition for a certificate of innocence to "take judicial notice of prior sworn testimony or evidence admitted in the criminal proceedings related to the convictions which resulted in the alleged wrongful incarceration," so long as the petitioner was either represented by counsel in such prior proceedings or knowingly waived the right to counsel). We invited petitioner to refile his motion to supplement the record after the record attendant to the certificate-of-innocence appeal was filed.

¶ 49          Neither party renewed the motion to supplement the record. In a footnote in his

appellant's brief, petitioner asserts that he will "renew that motion" if we determine the record is incomplete. In a footnote in its brief, the State asserts that "the trial court took judicial notice of the evidence [in] Petitioner's criminal case, *** even though the relevant adjudicative facts, sworn testimony, and evidence was recounted on the face of the [petition] and in the *Gladney* opinion attached thereto."

¶ 50      After reviewing the record in connection with the certificate-of-innocence proceedings, it is not clear whether the trial court considered any portion of the underlying criminal record that is not already included in the present record on appeal. The court made some comments during the hearing on the petition indicating it understood it had the authority to take judicial notice of materials from the underlying criminal case. However, neither party directly requested the court to take judicial notice of anything specific, nor did the court expressly say it was doing so. The court's written order did not reflect that the court took judicial notice of anything or reviewed the trial transcripts from the underlying criminal case.

¶ 51      Although it would have been helpful to the litigants and this court for the trial court to have been clearer about whether it took judicial notice of the prior trial testimony—as opposed to merely relying on the Third District's summary of the trial evidence—neither party identifies this as an impediment to our review. We presume that the Third District included an accurate and complete recitation of the trial evidence in its Rule 23 order. Absent a pending motion or an express indication that the court reviewed portions of the underlying criminal record that we do not have, we will not consider the record filed in connection with petitioner's direct appeal.

¶ 52                          B. The Standard of Review

¶ 53      The parties debate the proper standard of review. Petitioner maintains that we should review the trial court's "factual decision" pursuant to the manifest-weight-of-the-evidence

standard, whereas we should review *de novo* the court's "legal conclusions and its factual findings based upon documentary evidence." The State contends that we should review the order for an abuse of discretion.

¶ 54        We reject petitioner's argument that *de novo* review is appropriate. *De novo* review is warranted in a certificate-of-innocence appeal where the case presents a purely legal issue, such as a dispute regarding the proper interpretation of a statute. See *People v. Brown*, 2022 IL App (4th) 220171, ¶ 11. The present appeal does not require us to address any purely legal issue, as the sole disputed matter is whether petitioner proved his innocence. Although petitioner identifies what he calls "legal errors" in the trial court's written order, his point is merely that the court's reasons for finding that he failed to prove his innocence were incorrect and unpersuasive. Moreover, petitioner's request for *de novo* review of "factual findings based upon documentary evidence" is inapt, as the court heard testimony at the hearing on the petition for a certificate of innocence. Under the circumstances, *de novo* review is unwarranted.

¶ 55        There are two standards of review that might potentially apply here: the abuse-of-discretion standard and the manifest-weight-of-the-evidence standard. When reviewing for an abuse of discretion, a court considers "whether the trial court's decision is arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it." (Internal quotation marks omitted.) *People v. Morgan*, 2025 IL 130626, ¶ 23. When applying the manifest-weight-of-the-evidence standard, a court considers whether "the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." (Internal quotation marks omitted.) *Morgan*, 2025 IL 130626, ¶ 21. As can be seen, both standards are deferential (*Terrell*, 2022 IL App (1st) 192184, ¶ 51) and there is substantial semantic overlap in how the standards are articulated.

¶ 56　　　　This court has said that unless an appeal presents an issue of law warranting *de novo* review, " '[g]enerally, granting a certificate of innocence is within the sound discretion of the [trial] court.' " *Brown*, 2022 IL App (4th) 220171, ¶ 11 (quoting *People v. Amor*, 2020 IL App (2d) 190475, ¶ 11). Other districts of the appellate court likewise have typically applied the abuse-of-discretion standard. See *e.g.*, *People v. Rodriguez*, 2021 IL App (1st) 200173, ¶ 44 ("It is well settled that the determination of whether a petitioner is entitled to a certificate of innocence is committed to the discretion of the circuit court."); *Pollock*, 2014 IL App (3d) 120773, ¶ 26 (same). However, one division of the First District has held that the manifest-weight-of-the-evidence standard is appropriate. *People v. McIntosh*, 2021 IL App (1st) 171708, ¶ 41.

¶ 57　　　　In *Washington*, 2023 IL 127952, ¶ 47, a four-member majority of our supreme court expressly declined to resolve the split within the appellate court about which of the two deferential standards of review applies. In a special concurrence, three justices opined that the proper standard of review is whether the judgment is against the manifest weight of the evidence. *Washington*, 2023 IL 127952, ¶ 70 (Rochford, J., specially concurring, joined by Theis and Overstreet, JJ.).

¶ 58　　　　Here, the result of the appeal would be the same regardless of whether we applied the abuse-of-discretion standard or the manifest-weight-of-the-evidence standard. As we will explain, the trial court reasonably concluded that petitioner failed to prove his innocence of the charged offenses by a preponderance of the evidence. Accordingly, we need not decide which of the two deferential standards of review applies, and we will await further guidance from our supreme court on that issue. See *Pursley*, 2022 IL App (2d) 210558, ¶ 60 (declining to address whether abuse-of-discretion or manifest-weight-of-the-evidence review applied because that issue would not affect the outcome of the appeal); *Terrell*, 2022 IL App (1st) 192184, ¶ 51 (same). Notably, neither party argues that the result of this appeal would be different under one standard

or the other.

¶ 59            C. The Trial Court Reasonably Determined That Petitioner

Failed to Prove His Innocence

¶ 60            We hold that the trial court reasonably determined petitioner failed to prove his innocence of the charged offenses by a preponderance of the evidence. Although petitioner denied possessing contraband or knowing of its presence inside the residence at 2121 West Kellogg Avenue, the totality of the circumstantial evidence could lead a reasonable person to doubt petitioner's testimony. Petitioner admittedly had a key to this residence and stayed there overnight shortly before the police executed the search warrant. Harper, who was the tenant of this residence, testified that she purchased heroin from petitioner the night before the search. Petitioner never denied that claim, and Harper never recanted any of her testimony. Harper also testified that she told petitioner he could use the dresser under which the police later found the contraband and that petitioner put his duffel bag in that bedroom. The police ultimately found petitioner's bag, along with some male clothing, in the bedroom near the contraband. When the police arrested petitioner, he had $476 on his person. Harper denied owning the gun that the police found in the bedroom. These collectively suspicious circumstances justified the court in finding that petitioner failed to prove his innocence by a preponderance of the evidence, notwithstanding his protestations of innocence. It is apparent that the court did not credit all of petitioner's testimony by a preponderance of the evidence. Under the circumstances, we have no basis to reverse that credibility assessment.

¶ 61            Petitioner emphasizes that he was the only witness to testify at the hearing on the certificate of innocence. Quoting *People ex rel. Brown v. Baker*, 88 Ill. 2d 81, 85 (1981), petitioner argues that a factfinder may disregard unrebutted testimony only if it is " 'contradicted,' "

" 'inherently improbable,' " or " 'impeached.' " According to petitioner, the trial court did not find that his testimony was contradicted, inherently improbable, or impeached. Rather, petitioner submits that the court turned the "*Brown v. Baker* rule on its head" by requiring petitioner to show that his unrebutted testimony was " 'inherently probable.' "

¶ 62 We determine that this argument does not justify disturbing the trial court's decision. Although the State did not introduce new evidence at the hearing on the petition to counter petitioner's testimony, the State was under no obligation to do so. See *Terrell*, 2022 IL App (1st) 192184, ¶¶ 44, 46 (rejecting a petitioner's argument that the burden shifted to the State to prove his guilt once he presented " 'some evidence' " of his innocence). Significantly, a factfinder is free to reject unrebutted testimony that is contradicted "by circumstances." *Brown*, 88 Ill. 2d at 85. As explained above, the circumstances shown by the trial evidence provided a reasonable basis not to accept at face value petitioner's protestations of innocence at the hearing on the petition.

¶ 63 In further support of his point that the trial court improperly rejected his unrebutted testimony, petitioner cites *Washington*. In *Washington*, the petitioner submitted substantial evidence in support of his petition for a certificate of innocence, which showed that the investigating police officers—who were "subordinates of infamous Chicago police detective Jon Burge"—tortured the petitioner into confessing to a murder in the early 1990s that he did not commit and coerced witnesses to implicate him. *Washington*, 2023 IL 127952, ¶ 3. The evidence showed that these police officers committed similar abusive conduct "in more than 20 other cases." *Washington*, 2023 IL 127952, ¶ 58. "The State did not participate in the certificate of innocence proceedings," and there was no dispute that the petitioner was innocent of murder. *Washington*, 2023 IL 127952, ¶¶ 54, 56. Nevertheless, to evaluate whether the petitioner had voluntarily

brought about his own conviction by pleading guilty to murder—which would defeat his request for a certificate of innocence—over the petitioner's objection, the trial court considered "extrarecord materials," including transcripts of a motion to suppress hearing and a codefendant's trial. *Washington*, 2023 IL 127952, ¶ 21. The court then relied on those materials when denying the petition, refusing to credit the petitioner's claim that police officers coerced his confession. *Washington*, 2023 IL 127952, ¶ 51.

¶ 64 Our supreme court reversed the judgment denying the petition for a certificate of innocence. The court explained that it was improper for the trial court to make credibility findings based on judicially noticed records in what amounted to an independent investigation. *Washington*, 2023 IL 127952, ¶¶ 52-54. The court emphasized that the petitioner's evidence of police coercion was "unrebutted and compelling." *Washington*, 2023 IL 127952, ¶ 56. Considering that the State did not establish itself as the petitioner's "adversary" in the certificate-of-innocence proceedings, the court reasoned that there was nothing in the record impeaching the petitioner's claim, contradicting it, or rendering it inherently improbable. *Washington*, 2023 IL 127952, ¶ 56. Thus, the trial court was "not free to reject the petitioner's evidence," and the petitioner was entitled to a certificate of innocence. *Washington*, 2023 IL 127952, ¶¶ 56, 61.

¶ 65 *Washington* does not support petitioner's argument that the trial court here was required to believe his unrebutted testimony at the certificate-of-innocence hearing. Unlike in *Washington*, the State opposed petitioner's request for a certificate of innocence. Additionally, the court did not make credibility determinations based on an independent investigation conducted over petitioner's objection. We also consider that petitioner's general protestations of innocence were not nearly as compelling as the independent, corroborative evidence of pervasive police misconduct that the petitioner presented in *Washington*.

¶ 66       Petitioner criticizes several other comments in the trial court's written order. For example, the court found there was "still a question as to Petitioner's innocence" and it was "a 50-50 case." Petitioner argues that "there was no reason to conclude that this 'question' defeated the proof of his innocence by a preponderance of the evidence." He emphasizes that he was not required "to prove his innocence with proof beyond a reasonable doubt or even by clear and convincing evidence." He concludes, "To require a [certificate-of-innocence] petitioner to resolve any and all 'questions' about his innocence would defeat the remedial purpose of the statute and make it virtually impossible for any [certificate-of-innocence] petitioner to succeed."

¶ 67       Petitioner's arguments with respect to these comments do not persuade us that the judgment was erroneous. The trial court plainly understood and applied the statutory burden of proof. In context, the court was explaining that, notwithstanding petitioner's testimony that he was innocent, the court could not conclude from the record that this proposition was more probably true than not, so petitioner did not meet his burden. We discern no error with respect to this remark.

¶ 68       Petitioner also mentions the trial court's comment that it "would not be out of the realm of possibilities" for a factfinder to believe that Harper was a drug addict who obtained drugs from petitioner and that petitioner moved between houses with contraband. Petitioner asserts that this point "may have established a reasonable doubt that he could be guilty but hardly defeated the strong evidence that he was innocent." We see no error in the court's comment, which was prompted by petitioner's point in his closing argument that Harper could have been charged with possessing the subject contraband. The record justifies a strong suspicion that Harper was an addict who bought drugs from petitioner, who stored contraband at her home temporarily.

¶ 69       Petitioner also criticizes the trial court's remark that the "entirety of the facts set out" in the decision in his direct appeal "certainly paint a picture of circumstantial evidence that

more than suggests the drugs and gun found at the scene were placed there by the Petitioner." Petitioner contends that this sentiment was "rebutted by the appellate court opinion itself." See *Gladney*, 2022 IL App (3d) 200066-U, ¶¶ 30-31 (explaining the weakness of the State's circumstantial evidence). We recognize that the Third District said that "there was little, if any, circumstantial evidence to support a reasonable inference that [petitioner] intended to exercise control over the contraband." *Gladney*, 2022 IL App (3d) 200066-U, ¶ 30. The court also wrote that "[a]bsent [petitioner's] presence at 2121 West Kellogg on the morning of January 26, 2019, there is no evidence linking [petitioner] to the controlled substances or the firearm." *Gladney*, 2022 IL App (3d) 200066-U, ¶ 31. However, the court made these remarks in the context of addressing whether the State met its burden to prove the charges beyond a reasonable doubt, not whether petitioner met his burden to show by a preponderance of the evidence that he was innocent of the charges. See *Pollock*, 2014 IL App (3d) 120773, ¶ 37 (explaining that the certificate-of-innocence statute differentiates between actual innocence and a reviewing court's finding that the State failed to prove the charges beyond a reasonable doubt). Plainly, there *was* circumstantial evidence of petitioner's connection to the contraband, which we identified above. The appellate court on direct appeal determined that this circumstantial evidence was insufficient for the State to meet its burden beyond a reasonable doubt under the legal framework for evaluating a constructive possession theory. Given that the issues were different, we discern no incongruence in the way that the appellate court assessed the facts of the case on direct appeal versus how the trial court viewed those same facts when petitioner later sought a certificate of innocence.

¶ 70        Finally, petitioner criticizes the following comment the trial court made:

"The indictment in Petitioner's criminal case (2019 CF 66) established

probable cause (or reasonable grounds) for filing the charges therein. This court's

- 22 -

ruling herein is consistent with a finding that [petitioner's] innocence (or guilt) of these charges, after all is said and done in this case, is impossible to conclude to a standard or [*sic*] more likely than not—either way."

Petitioner argues that this comment underlined the court's "misunderstanding of the standard of proof," given that probable cause is something less than a preponderance of the evidence. See *People v. Burks*, 355 Ill. App. 3d 750, 757 (2004) ("Determinations of probable cause are naturally based on probabilities, and a finding of probable cause does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime."). Petitioner proposes that if a pretrial showing of probable cause could defeat a petition for a certificate of innocence, nobody could ever obtain one. Petitioner also contends that the court's reasoning here was a non sequitur.

¶ 71  We agree that the trial court's reference to probable cause was ill-advised and a bit of a non sequitur, but we do not conclude it shows the court misunderstood the standard of proof. In context, we do not interpret the court's comment as suggesting that a pretrial finding of probable cause forecloses a petition for a certificate of innocence. Rather, it seems the court was just reiterating that it could not determine by a preponderance of the evidence whether petitioner was innocent of the charged offenses. Earlier in its order, the court noted that the proof and evidence was equivocal "for one or more of the following non-exclusive reasons." Notwithstanding the passing reference to probable cause, the court's other reasoning justified its conclusion that petitioner failed to prove his innocence by a preponderance of the evidence.

¶ 72       D. Questioning by the Trial Court

¶ 73  Petitioner also argues that the trial court abused its discretion and committed second-prong plain error by "reopening the evidence to extensively cross-examine" him and

"undermine his credibility." Petitioner proposes that the court's questioning "indicated prejudgment" and "placed the circuit court in the role of an advocate for a respondent who had chosen to ask no questions and present no evidence." According to petitioner, the court's questioning was "hostile," sarcastic, and included a question violating the attorney-client privilege. Petitioner requests that we reverse the judgment and remand for a new hearing before a different judge.

¶ 74    The State responds that the trial court acted within its discretion by questioning petitioner about factual issues that were relevant to the proceedings. The State maintains that the court never asked any question that implicated the attorney-client privilege.

¶ 75    Petitioner forfeited this issue by failing to raise it below. See *Terrell*, 2022 IL App (1st) 192184, ¶ 36 ("Generally, issues not raised in the circuit court are forfeited).

> "The purpose of the forfeiture rule is to encourage parties to raise issues in the circuit court, thus ensuring both that the circuit court is given an opportunity to correct any errors prior to appeal and that a party does not obtain a reversal through his or her own inaction." *Terrell*, 2022 IL App (1st) 192184, ¶ 36.

Petitioner invokes the second prong of the plain-error doctrine, which is a method of addressing forfeiture in *criminal* cases where a clear or obvious error occurred that was "so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *People v. Moon*, 2022 IL 125959, ¶ 20. However, a certificate-of-innocence proceeding is civil in nature (*Terrell*, 2022 IL App (1st) 192184, ¶ 40), and petitioner presents no argument as to why the plain-error doctrine should apply. Our own research has revealed that something akin to the plain-error doctrine has been applied exceedingly rarely in civil cases and " 'only where the act complained of was a prejudicial error so egregious that it deprived the complaining party of a fair

trial and substantially impaired the integrity of the judicial process.' " *Wilbourn v. Cavalenes*, 398 Ill. App. 3d 837, 856 (2010) (quoting *In re Marriage of Saheb*, 377 Ill. App. 3d 615, 627 (2007)).

¶ 76      Nothing approaching that standard happened here. The record confirms that the trial court questioned petitioner in a nonconfrontational and neutral way that was designed to elicit relevant information for the court's consideration. See *People v. Holland*, 2023 IL App (4th) 220384, ¶ 40 (explaining that courts have discretion to question witnesses in a fair and impartial way to elicit the truth or clarify the issues). We discern no hint of bias, hostility, or sarcasm in any of the court's questions that might indicate the court prejudged the case. See *Holland*, 2023 IL App (4th) 220384, ¶ 41 (noting that a litigant is prejudiced by a court's questioning of witnesses in a bench proceeding where " 'the tenor of the court's questioning indicates the court has prejudged the outcome before hearing all of the evidence' ") (quoting *People v. Smith*, 299 Ill. App. 3d 1056, 1063 (1998)). Petitioner emphasizes that the court asked him numerous questions following a brief direct examination by his own counsel and after the State declined the opportunity for cross-examination. However, petitioner cites no authority indicating that these factors suggest an abuse of discretion, let alone a compelling reason for overlooking the forfeiture, where the court's questions were fair and neutral. Moreover, petitioner is mistaken that the court asked him a question implicating the attorney-client privilege. The court merely referenced petitioner's testimony from his direct examination ("And didn't you tell your attorney you stayed there one or two times?").

¶ 77      Under these circumstances, there is no merit to petitioner's claim that the trial court acted improperly by reopening the evidence and questioning him.

¶ 78               III. CONCLUSION

¶ 79      For the reasons stated, we affirm the trial court's judgment denying petitioner a

certificate of innocence.

¶ 80    Affirmed.